MUELLER, Plaintiff and Appellant, v. MIZIA, Defendant and Respondent: SCHULER, Appellant: POSANSKI, Respondent.

*November 30, 1966—January 3, 1967.*

312

For the appellants there were briefs and oral argument by *Donald H. Mueller* of Milwaukee.

For the respondents there was a brief by *Nathan J. Rakita*, attorney, and *Jerome T. Safer* and *Albert R. Tadych* of counsel, all of Milwaukee, and oral argument by *Mr. Safer* and *Mr. Tadych*.

HEFFERNAN, J.

### Was the sale confirmed?

Much of appellant Mueller's argument is directed to a state of facts that does not exist. It would serve little purpose to clutter this opinion with a litany of his misconceptions. Suffice it to say that one premise upon which he bases his case—that the sale in question was confirmed and that the court set aside a confirmed sale—

is without foundation in the record. The detailed study that this court has given to the record shows absolutely no order confirming the sale to Mueller. Rather, each of the judge's several orders restrains the receiver from issuing a deed pursuant to the proposed sale. At the November 15th hearing, after hearing evidence that clearly showed the inadequacy of Mueller's offer, the judge stated, "There won't be any more argument on the case. Thirty days to come up with a higher bid. If not, your sale *is to be* confirmed." (Emphasis supplied.)

The order dated December 13, 1965, signed pursuant to that statement from the bench, provided that "order hereby confirming the sale . . . *Is hereby stayed until December 16, 1965.*" It is apparent that the sale was not confirmed. The court instead restrained all action of the receiver, such as delivering the deed that would follow had there been a confirmation of the sale. We need not therefore consider the appellant's contention that the court set aside a confirmed sale. It refused to confirm the sale.

*Did the trial court err in refusing to confirm the sale?*

We find no error in the trial court's refusal to confirm the sale. This court recently summarized its past decisions on the duty of a trial court in either confirming or refusing to confirm a judicial sale. We stated:

"(1) The granting or refusing of an application to set aside a judicial sale rests in the sound discretion of the court and its determination will not be disturbed except for a clear abuse of discretion.

"(2) Such a sale will not be set aside merely because the price is inadequate unless: (a) There is also a showing of mistake, misapprehension, or inadvertence on the part of interested parties or of intending bidders which caused the failure to obtain a fair and adequate price; or (b) the inadequacy of price is sufficient to shock the conscience of the court." *Barnard v. Coates* (1965), 28

Wis. (2d) 1, 8, 135 N. W. (2d) 809. See also *Gumz v. Chickering* (1963), 19 Wis. (2d) 625, 634, 121 N. W. (2d) 279.

In its order of December 27, 1965, the court vacated and set aside the sale to Mueller "in the interests of justice and not because of inadequacy of price." In view of all the evidence of record, we deem that this phrase can only be construed to mean that the sale was set aside not merely because of the inadequacy of the price but because the price was so inadequate as to be unjust and unconscionable. To construe the phrase otherwise would be to presume an abuse of discretion, when in fact the order denying confirmation is fully supported by the evidence.

We have previously said that we will not reverse a court decision though the reason for that decision may have been erroneously or inadequately expressed. *Medlock v. Schmidt* (1965), 29 Wis. (2d) 114, 122, 138 N. W. (2d) 248; *Wintersberger v. Pioneer Iron & Metal Co.* (1959), 6 Wis. (2d) 69, 73, 94 N. W. (2d) 136. Whether the ground assigned by the trial judge for its refusal to confirm the sale is correct is immaterial if, in fact, the ruling is correct and the record reveals a factual underpinning that would support the proper findings.

As we stated in *Bautz v. Adams* (1907), 131 Wis. 152, 159, 111 N. W. 69:

"The presumptions are rather against the existence of error than in favor thereof. . . . So we should approach the consideration of such a question as that in hand from the viewpoint that the leaning should be towards supporting rather than defeating the judgment, while not hesitating to do the latter for prejudical error efficiently appearing.

"In construing an ambiguous finding the same rule should prevail as in the construction of a contract or a law. That one of two or more reasonable probable meanings of the language used should be adopted which will make the same material and will support the judgment

rather than one which will defeat it, and in solving the matter resort should be had to the evidence . . . .

". . . if the record discloses with reasonable and satisfactory certainty a preponderance of evidence in favor of the existence of the fact essential to support the judgment it may be found here accordingly and the litigation terminated the same as if there were a finding on the point by the trial court."

In *Simon v. Lecker* (1939), 231 Wis. 106, 285 N. W. 406, the trial court based its decision on a ground that would have constituted reversible error but this court therein examined the record to determine whether there was evidence to substantiate a proper finding and verdict. Upon finding such evidence, the court concluded that despite the ambiguity of the order that, "Where the evidence warrants either of two conclusions the court is deemed to have taken the view that supports its conclusion."

In *Miles Homes, Inc., v. Starrett* (1964), 23 Wis. (2d) 356, 359, 127 N. W. (2d) 243, we implied from the conclusion an essential finding that was not explicitly made but was supported by the evidence.

In this case the question is therefore whether the record reveals that the court intended to express by its order that the price was inadequate and unconscionable, and whether there was evidence to show that the judge did not abuse his discretion in so holding.

We conclude that the record clearly evidences the inadequacy of the price offered. Mueller offered to pay $200 for the property. There was evidence that Mrs. Mizia's interest, which is what Mueller was attempting to buy, had a valuation substantially in excess of the bid. While evidence was presented by the plaintiff that tended to make the price offered look reasonable, the trial judge chose not to believe such evidence. He explicitly rejected the opinion of value by plaintiff's witness and accepted

the valuation given by Mr. Henry J. Wojcik. The judge stated:

"As between the two appraisers, Mr. Wojcik is head and shoulders above the other man as far as knowing the value of south side property, and on credibility the Court will take Mr. Wojcik's statement as to value."

The court later found the value to be $25,000 despite the contention of the appellant that the value did not exceed $16,000. It is clear that the court could properly have determined the value to be $25,000, in view of the reliable opinion evidence to support such a finding; and the valuation so found was not contrary to the great weight and clear preponderance of the evidence. It should be noted also that Mueller acknowledged that the property had the value of $25,000 for one who desired immediate occupancy, and he later asserted that he represented one Schuler, who desired the property for immediate use.

It is apparent, therefore, that, on the basis of the evidence before the court, it could conclude that for the price of $200 Mueller was attempting to acquire property valued at $25,000, subject to encumbrances in the amount of $17,352.68, leaving a net equity of $7,647.32. In addition, it appears that Mueller's judgment lien was not bid in and would remain a personal obligation against Mrs. Mizia and a lien against any other nonexempt property she might possess. That this price was inadequate is obvious. Mueller attempted to acquire an equity in the property that, according to the facts then before the court, was appraised at 38 times the amount of the bid.

The statements made by the trial judge during the course of these tangled proceedings indicate his dismay at the inadequacy of the price and the fact that the conscience of the court was shocked. At various times the judge stated:

"The woman is losing the property. Let's talk sense. The Court can say the whole thing is unconscionable, which the Court will."

"I want the Supreme Court to get this whole record."

"You will not get it for $200.00. I think the Supreme Court would be very much interested in knowing the mechanism of this whole thing, if you get a judgment against a person for attorney's fees, have yourself appointed Receiver [have a receiver appointed?], sequestration action, bid in on the tavern she owns yourself for $200.00 and take it over for nonpayment of attorneys fees."

"You are not going to buy property worth $25,000 for a $16,000 figure."

"I am not setting aside merely for inadequacy. I think in justice . . . [Interruption by Mueller]"

The court concluded that the price bid by Mueller was inadequate and unconscionable. It was proper for him to do so, and in view of the fact that he believed the defendant's expert as to value, and not the plaintiff's, it would have been an abuse of discretion to confirm the sale.

The correctness of the court's view was borne out in the proceeding in regard to Mrs. Mizia's sale of the same property to one Posanski. While Mueller bid $200 for the property, he explicitly did not bid in his own judgment, and the property was subject to all prior liens and encumbrances. Posanski's bid for the property was: (1) $1,000 cash, (2) $700 in receiver's fees and expenses, (3) $763.86 in back taxes owed on the property, and (4) full satisfaction of Mueller's judgment in the amount of $1,768.90. Posanski also agreed to satisfy all outstanding judgment liens and the mortgage on the property. Thus, Posanski's bid for the equity was $4,232.76 or $4,032.76 more than Mueller's. Looked at another way, Posanski bid approximately 21 times what Mueller bid. Posanski's bid would seem to be irrefutable evidence of the shocking and unconscionable inadequacy of Mueller's bid.

A careful reading of the record convinces us that in a most difficult and aggravating case the learned trial judge, with the exercise of great patience and admirable

restraint, properly refused confirmation of the receiver's sale, vacated those proceedings, discharged the receiver, and directed the sale of the property to Posanski.

After the order setting aside the sale, Mueller brought on for hearing an order to show cause why one Schuler should not be substituted as a party in these proceedings. At the hearing held on January 10, 1966, Mueller for the first time asserted that in the entire judicial sale proceedings he represented not himself but Otto Schuler. Whether or not Schuler is a party is immaterial in view of the finding, affirmed by this court, that the judicial sale to Mueller (whether acting as an agent for Schuler or not) was properly set aside. It does not appear that his interest, which in any event was dependent upon Mueller's position, would in any way be affected by joinder or nonjoinder, particularly where Mueller acted as attorney for Schuler and for himself. However, the trial judge chose not to believe either Mueller or Schuler in this respect. It would appear that this conclusion was not contrary to the great weight and clear prepondance of the evidence elicited in the course of the proceedings. Attorney Mueller on numerous occasions referred to himself as the purchaser of the property and led the court to believe that his interest in the property was as a purchaser for investment purposes. Yet, at the January 6th hearing he claimed that at all times he was acting for Schuler, a heretofore undisclosed principal, who wished to acquire the property for immediate occupancy. At various times, therefore, Mueller made inconsistent and contradictory representations to the court. On the basis of these conflicting assertions it was not unreasonable nor contrary to the great weight and clear preponderance of the evidence to discount the statements of Schuler and Mueller as being unworthy of belief.

While we recognize the right and desirability of an attorney to represent an undisclosed principal, we cannot conclude that this gives an attorney license to misrepresent to the court the capacity in which he appears. If

Mueller's present assertion is to be believed, a deliberate misrepresentation was foisted upon the court during a portion of these proceedings. We find no fault with a lawyer who avowedly acts for another but, in deference to the interests of his client, keeps confidential the client's identity—this is quite a different matter than what was apparently perpetrated here. We are obliged to express our deep disapproval of Attorney Mueller's lack of candor with the court.

Two motions were held in abeyance to await the decision on appeal. The respondent Posanski appeared in the trial court and actively, through his attorney, participated in the proceedings. We conclude that pursuant to sec. 274.11, Stats., he was a "party adverse to him [the appellant] upon the appeal who appeared in the action or proceeding." Had this court determined that the orders of the trial court were to be reversed, Posanski and his successors in title would have lost all rights granted in the property by virtue of the orders of the circuit court. Posanski has had an active and adverse interest in this appeal, and his motion to be dismissed as a party to this appeal is denied.

We also deny the motion of appellant Mueller that certain portions of respondent Mizia's brief, appendix, and record be stricken. Sec. 251.35, Stats., provides that a supplementary appendix may be filed containing such portions of the appeal record as "the respondent deems . . . material." Sec. 251.25 (6) provides that the appeal record includes not only "orders material to the appeal, and papers upon which they are based," but also "all other papers material to the appeal." We conclude that such materiality appears, particularly since one of the respondent's contentions was that the appeal was moot because Mueller's judgment against Mizia was satisfied (a contention not discussed since it was not necessary to the determination of this appeal). Evidence of mootness was contained in documents not a portion of the case below,

324

and some of the material contained in the portions objected to arose after the date of two orders appealed from. They were material to the question of mootness and shed considerable light upon the conduct of the parties and attorneys during the proceedings that are the subject of this appeal. They are properly a part of this record.

*By the Court.*—Orders affirmed. No costs will be assessed on either of the motions, costs on the appeal to be assessed against the appellant Mueller in favor of the respondent Mizia and the respondent Posanski.