STATE of Wisconsin, Plaintiff-Respondent,

v.

Frederick M. OLSEN, III, Defendant-Appellant.†

Court of Appeals

*No. 80-343-CR. Submitted on briefs October 10, 1980.—*
*Decided November 24, 1980.*
(Also reported in 299 N.W.2d 632.)

---

† Petition to review denied. DAY, J., took no part.

For the defendant-appellant the cause was submitted on the briefs of *Robert J. Paul,* deputy state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Mary V. Bowman,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J.   Defendant was convicted of disorderly conduct, sec. 947.01, Stats., arising out of a demonstration against a shipment of spent fuel from a nuclear power plant. He appeals from an order denying his motion for post-conviction relief.

The Dairyland Power Cooperative operates a nuclear power plant near Genoa in Vernon County. Defendant views the development of nuclear power as unsafe or otherwise undesirable in many respects. He belongs to a group known as the Coulee Region Energy Coalition (CREC) which shares his concerns.

Defendant became aware that the Dairyland power plant would be shipping spent fuel rods to Illinois for temporary storage. Because the fuel rods are radioactive, they are sealed in a protective cask and shipped one cask per truckload. Ordinarily, the type of cask used by Dairyland would hold two rods. The cask it was using was defective, however, and would only hold one rod. Dairyland was shipping eight rods to Illinois, and it was thus necessary to make eight trips.

The first rod was shipped early on March 27, 1979. Defendant and other members of CREC became aware at about that time that the cask was defective. A decision was made to demonstrate against further shipments.

Defendant arrived at the power plant between 8:00 and 9:00 p.m. on March 28, 1979, and loading of the cask onto a truck was completed at about 4:15 a.m. on

March 29. Sheriff Banta took his squad car into the fenced area surrounding the plant, advised the truck driver to stay close behind him, and began to escort the truck out of the plant. As soon as the sheriff's car left the enclosed area, four demonstrators, including defendant, formed a line blocking the road. The sheriff got out of his car and asked them to move. When they did not, he told the officers standing nearby to arrest them.

Defendant was subsequently charged with disorderly conduct in violation of sec. 947.01, Stats. He was found guilty and his motion for post-conviction relief was denied.

Defendant raises the following issues on appeal:

(1) Was defendant entitled to raise the defenses of necessity, self-defense, and defense of others at trial?

(2) Did the trial court's definition of "otherwise disorderly" deny defendant's right to a unanimous jury?

(3) Is sec. 947.01, Stats., unconstitutionally overbroad?

(1) *Defenses*

## A. *Necessity*

The state brought a motion to prevent defendant[1] from introducing evidence regarding the safety aspects of nuclear power plants or spent fuel. The judge, after listening to arguments of counsel, ruled that the evidence was irrelevant to the issue of whether defendant's conduct was disorderly. He ruled that defendant could testify as to his subjective beliefs about the dangers of nuclear

[1] Although we refer to defendant in the singular, four defendants were tried for the same offense arising out of the demonstration on March 29, 1979. Two defendants, including one involved in the March 29 demonstration, were also tried for disorderly conduct with regard to a demonstration on April 2, 1979. Both counts and all defendants were joined for prosecution in one action.

power and spent fuel so that the jury would understand his motivation for blocking the truck. The judge stated that he would not allow testimony from the defendant or his expert witnesses regarding objective facts about those dangers.

Defendant informed the judge that he intended to raise the defense of necessity as a justification of his acts. He asked that he be allowed to make an offer of proof before the judge ruled on the state's motion *in limine* to demonstrate that the evidence which the state sought to exclude would establish the defense. The judge refused to hear the offer of proof at that time, ruling that the necessity defense did not apply as a matter of law to defendant's actions. Defendant was granted the opportunity to make an offer of proof at the end of the trial.

Defendant claims that the defense of necessity applies to this fact situation, that the judge erred in excluding evidence which would have established the defense, and that the judge further erred in not allowing him to make an offer of proof before granting the state's motion *in limine*.

Section 939.47, Stats., provides in relevant part:

*Pressure of natural physical forces* which causes the actor reasonably to believe that his act is the only means of preventing imminent public disaster, or imminent death or great bodily harm to himself or another and which causes him so to act, is a defense to a prosecution for any crime based on that act. (Emphasis added.)

The statute essentially codifies the common law rule of necessity. *See* W. LaFave & A. Scott, Jr., *Handbook on Criminal Law* at 381–88 (Hornbook Series 1972) (hereafter cited as LaFave).

The defense of necessity is based on the policy that there are times when a higher value is promoted by violating a less significant value; that the greater good for society can, in some instances, only "be accomplished by vio-

lating the literal language of the criminal law." LaFave at 382. "The matter is often expressed in terms of choice of evils: When the pressure of circumstances presents one with a choice of evils, the law prefers that he avoid the greater evil by bringing about the lesser evil." LaFave at 382.

The ability justifiably to choose between evils is available in Wisconsin only if the person asserting the defense acted under "pressure of natural physical forces." Sec. 939.47, Stats. Examples of these forces are storms, fires, and privations. Thus, a person lost in a storm who breaks into an isolated house in order to take refuge is justified in so doing by the doctrine of necessity. LaFave at 384. A person who, seeking to stop the spread of a fire, razes a building in order to save a town is similarly justified. A third example is that of a person who throws property from an overcrowded boat in order to prevent it from sinking.

The actions of a private industry in shipping spent fuel do not constitute a natural physical force. The facts that the spent fuel consisted of uranium and its by-products, and that uranium is an element found in nature, do not convince us that the transportation of the spent fuel— the act which caused defendant to commit the crime—is a natural physical force.

Storms, fires and shipwrecks can rarely be controlled, often only after the fact. The transportation of spent fuels can be and is controlled.[2] This control has been assumed by government. Government must decide whether to allow a shipment of spent fuel to take place. The ability of the individual to make this choice, a concept which underlies the necessity defense, has been preempted by government.

---

[2] The operation of nuclear power plants and the transportation of radioactive materials are subject to state and federal control. *See* 42 U.S.C. secs. 5841 to 5851; Secs. 140.50 to 140.60, Stats; 10 C.F.R. secs. 71.1 to 71.64.

We hold that the defense of necessity is unavailable as a matter of law to a demonstrator who seeks to stop a shipment of spent fuels which he believes to be unsafe.

The doctrine of necessity is generally inappropriate to justify acts of civil disobedience, since the defendant's conduct, rather than attempting to directly avoid a specific harm, attempts to transcend accepted democratic processes and seeks to change a political decision of society which may only secondarily avoid a particular harm or evil. Tiffany & Anderson, *Legislating the Necessity Defense in Criminal Law*, 52 Denver L. J. 839, 844 (1975).

A contrary holding in this case would allow a citizen to disrupt government any time he felt government was not properly exercising its choice of values. We cannot permit such a result.

Defendant claims that his due process rights were violated because the trial judge ruled that the defense of necessity was inapplicable without first hearing defendant's offer of proof. Defendant claims the court could not have properly ruled on his motion without learning, through an offer of proof, whether there was a basis in the evidence for the defense.

In virtually all circumstances a trial court must hear an offer of proof to determine whether the evidence would support a defense before ruling whether evidence relating to that defense is relevant. Here, however, the court determined that the defense of necessity was not available because defendant's actions were not caused by the pressure of a natural physical force. It was not necessary for the trial court to take evidence to make this determination, for it was clear from the arguments of counsel that this was strictly a question of law; no offer of proof could have shown that the defendant responded to a natural physical force. For this reason,

the trial court did not err in ruling on the state's motion *in limine* without first hearing defendant's offer of proof.

Even if the court had erred in ruling without having the benefit of defendant's offer of proof, the error would have been harmless. The evidence adduced at trial and in the offer of proof which was eventually made show that the defense of necessity was not available. The additional elements of the defense of reasonable belief,[3] of no alternative means of preventing the harm,[4] and of imminent harm,[5] were not established. A defendant is not entitled to have the jury consider his theory of de-

[3] The testimony showed that none of the defendants believed that they could stop the shipment, and thus prevent the danger, by standing in front of the truck. This situation is analogous to that of a defendant who burned draft records in an effort to stop what he considered to be illegal actions involving the Vietnam war. In rejecting the necessity defense, *United States v. Simpson*, 460 F.2d 515, 518 (9th Cir. 1972), held that:

[a]n essential element of the so-called justification defenses is that a direct causal relationship be reasonably anticipated to exist between the defender's action and the avoidance of harm. . . . It was unreasonable for Simpson to assume that any violent action he initiated might have any significant effect upon the supposed ills that he hoped to remedy.

[4] *United States v. Bailey*, 444 U.S. 394, 62 L. Ed.2d 575 (1980); *United States v. Richardson*, 588 F.2d 1235 (9th Cir. 1978), *cert. den.* 440 U.S. 947 (1979). The obvious alternative legal means of avoiding the harm which defendant could have pursued was to obtain a temporary restraining order. Defendant's contention in his affidavit that he could not afford counsel to do so is of little relevance absent a showing that he made an effort to obtain *pro bono* representation or was unable to proceed *pro se*.

[5] "[T]he proper use of the imminence requirement is to focus attention on the probability of the threatened harm actually occurring." Tiffany & Anderson, *Legislating the Necessity Defense in Criminal Law*, 52 Denver L. J. 839, 845 (1975). We agree with the New Hampshire Supreme Court that the necessity defense applies to "imminent dangers from obvious and generally recognized harms. It [does] not deal with nonimminent or debatable harms . . . ." *State v. Dorsey*, 118 N.H. 844, 395 A.2d 855, 857 (1978). The harm alleged by defendant is at best debatable.

fense when there is no evidence to support it. *Johnson v. State*, 85 Wis.2d 22, 270 N.W.2d 153 (1978).

We join the New Hampshire Supreme Court in emphasizing, as it did in considering a similar defense to trespass at the Seabrook Nuclear Power Plant, that while defendant sought to express his concerns about the dangers of nuclear power, the desirability of that source of energy must be determined by the legislature, not the courts.

Nothing in this opinion should be construed as favoring or not favoring nuclear power. We deal only with the law as it relates to the defense relied upon. Nor do we pass upon the motives of the defendant. Good motives are not a defense to the commission of crime, except in a case of emergency not present here. *State v. Dorsey*, 118 N.H. 844, 395 A.2d 855, 857 (1978).

### B.  *Self-defense and Defense of Others*

Defendant claims that the trial court erred in granting the state's motion *in limine* because the evidence he would have introduced would have established that he was acting in self-defense and defense of others. Those defenses justify an individual's use of force. Sec. 939.48, Stats.[6] The defenses have generally been restricted to prosecutions for crimes against the person, such as murder and assault. LaFave at 391. The state did not claim that defendant used force. Defendant and his codefendants

---

[6] Section 939.48, Stats., provides in relevant part:

(1) A person is privileged to threaten or intentionally use force against another for the purpose of preventing or terminating what he reasonably believes to be an unlawful interference with his person by such other person. . . .

. . . .

(4) A person is privileged to defend a third person from real or apparent unlawful interference by another under the same conditions and by the same means as those under and by which he is privileged to defend himself from real or apparent unlawful interference.

emphasized that they did not resist arrest and that they were peaceful at all times during their demonstration. In the absence of an allegation or evidence that defendant used force, the trial court was correct in ruling that the defenses of self-defense and defense of others were not available to defendant.

(2) *Jury Unanimity*

Defendant contends that the jury instruction which the trial court gave regarding otherwise disorderly behavior violated his right to a unanimous jury. *Holland v. State,* 91 Wis.2d 134, 138, 280 N.W.2d 288, 290 (1979), *cert. den.,* 445 U.S. 931, 63 L. Ed.2d 764 (1980). The court instructed the jury as follows:

> The first element of this offense requires that the defendant engaged in one or more of the six stated types of conduct, namely: violent, abusive, indecent, profane, boisterous, unreasonably loud or engaged in otherwise disorderly conduct. . . . The term otherwise disorderly conduct means conduct of a type not specifically enumerated in the statute but similar thereto in having a tendency to disrupt good order and to provoke a disturbance. . . . The right to demonstrate, peaceably, in pursuance of one's constitutional rights of freedom of speech, freedom of assembly, and freedom to petition for redress of grievances is guaranteed by the Constitution. These constitutional guarantees of freedom, however, imply the existence of an organized society maintaining public order, without which, those freedoms themselves could be lost. Therefore, the right to demonstrate may be appropriate under certain circumstances and not under others. *Demonstrators in the exercise of these constitutional rights may not for example block traffic nor may they disregard lawful orders of officers nor may they block off free entry to or exit from public or private property.* (Emphasis added.)

Defendant argues that since part of the jury could have found that defendant was disorderly because he blocked traffic and part could have found him disorderly because he disregarded a lawful order of an officer, he was de-

nied his right to a unanimous jury. Defendant cites *Jackson v. State*, 92 Wis.2d 1, 284 N.W.2d 685 (Ct. App. 1979), in support of his contention.

Defendant failed to make a timely objection to the instruction at trial and therefore waived his right to argue this point on appeal. Sec. 805.13(3), Stats.; *State v. McNeal*, 95 Wis.2d 63, 67–68, 288 N.W.2d 874, 875–76 (Ct. App. 1980). Section 805.13(3) provides in relevant part:

At the close of the evidence and before arguments to the jury, the court shall conduct a conference with counsel outside the presence of the jury. . . . Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict.

Defendant argues that this statute applies only to civil actions.[7] Section 972.01, Stats., provides that "the duty of the court in charging the jury and giving instructions" is "the same in criminal as in civil actions." Section 972.11(1), provides that "the rules of evidence and prac-

---

[7] Defendant also argues that when a substantive federal constitutional right is at stake, there can be no waiver on procedural grounds. The cases cited in support of this proposition do not so hold. *Henry v. Mississippi*, 379 U.S. 443 (1965), holds that the United States Supreme Court will review a claim of error otherwise barred by a state procedural rule if the state has no legitimate interest in insisting on compliance with the rule. The waiver rule found in sec. 805.13(3), Stats., serves the legitimate interest of promoting judicial economy; errors in instructions should be raised before the jury is charged, and objections should certainly be made before a verdict is returned, in order to give the court a chance to correct its error and avoid the necessity of a second trial. *See Air Wisconsin, Inc. v. North Cent. Airlines, Inc.*, 98 Wis.2d 301, 311, 296 N.W.2d 749, 753 (1980). The remaining cases cited by defendant are either in accord with *Henry*, concern federal habeas corpus relief, or do not mention waiver.

tice in civil actions shall be applicable in all criminal proceedings unless the context of a section or rule manifestly requires a different construction." These statutes make sec. 805.13 (3), Stats., applicable to criminal proceedings. The statute has been applied in the criminal context in *McNeal, supra,* and *State v. Dix,* 86 Wis.2d 474, 486, 273 N.W.2d 250, 256 (1979).

Nor do we find that the instruction as given so misstated the law as to cause a miscarriage of justice justifying a reversal despite the waiver. *See* sec. 751.06, Stats. The uncontradicted testimony at trial indicated that defendant stood in front of the truck, that the sheriff or other officers ordered him to move, and that he was arrested when he failed to comply with this order. There is no practical difference between finding that defendant blocked traffic and finding that he failed to obey the lawful order of an officer when the order which he disobeyed was to cease blocking traffic. Only one act was involved: blocking traffic after he had been ordered to move. Defendant's right to a unanimous jury was not violated by the court's instruction.

Defendant also contends that the court's failure to instruct the jury that it was to apply a state-wide community standard in determining what conduct should be considered disorderly,[8] and its failure to instruct the jury that it should use a "reasonable man" standard rather than subjective impressions of what constitutes disorderly conduct, violated his right to a unanimous

---

[8] The jury was instructed as follows:

The principle on which this offense is based is that in an organized society one should conduct himself as to not unreasonably offend the senses or sensibilities of others in the community. This does not mean that all conduct which tends to disturb another is disorderly conduct. Only such conduct as unreasonably offends the sense of decency or propriety of the community is included. It does not include conduct which is generally tolerated by the community at large but which might disturb an overly sensitive person.

jury. These arguments are to some extent contradictory, in that if the jury is to apply a community standard, it cannot apply the individualistic "reasonable man" standard. In any event, failure to object to the instructions as given constitutes waiver. Sec. 805.13(3), Stats.

(3) *Overbreadth*

Defendant's final argument is that the disorderly conduct statute, sec. 947.01, Stats., is unconstitutionally overbroad. This argument has been rejected by both the Wisconsin Supreme Court and federal courts.[9] Because the court of appeals is bound by prior decisions of the Wisconsin Supreme Court, *Livesey v. Copps Corp.*, 90 Wis.2d 577, 581, 280 N.W.2d 339, 341 (Ct. App. 1979), we find no merit in defendant's claim.[10]

*By the Court.*—Order affirmed.

[9] *State v. Givens*, 28 Wis.2d 109, 135 N.W.2d 780 (1965) (held statute not vague); *State v. Zwicker*, 41 Wis.2d 497, 164 N.W.2d 512 (1969), *appeal dismissed* 396 U.S. 26 (1969); *State v. Maker*, 48 Wis.2d 612, 180 N.W.2d 707 (1970), *cert. den.* 401 U.S. 1013 (1971); *Zwicker v. Boll*, 270 F. Supp. 131 (W.D. Wis. 1967), *aff'd per curiam* 391 U.S. 353 (1968); *Soglin v. Kafufman*, 286 F. Supp. 851 (W.D. Wis. 1968). Defendant suggests that we should review this issue again because the per curiam Supreme Court affirmance in *Zwicker v. Boll* left open the question of the constitutionality of the statute. That argument was expressly rejected in *Soglin* and *State v. Zwicker*.

[10] Because the precedent is clear and controlling, we will not reach the issue of whether defendant's constitutional attack is subject to the waiver rule of sec. 971.31(2), Stats. *See State ex rel. Skinkis v. Treffert*, 90 Wis.2d 528, 280 N.W.2d 316 (Ct. App. 1979).