STATE of Wisconsin, Plaintiff-Respondent,

v.

Bonnie J. HORN, Defendant-Appellant-Petitioner.


STATE of Wisconsin, Plaintiff-Respondent,

v.

Norman L. STONE, Defendant-Appellant-Petitioner.


STATE of Wisconsin, Plaintiff-Respondent,

v.

Jerry G. HORN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 85–0246–CR. Argued March 4, 1987.—Decided June 23, 1987.*

(Also reported in 407 N.W.2d 854.)

473

For the defendant-appellant-petitioner there were briefs by *Jonathan M. Menn, Menn, Nelson, Sharratt, Teetaert & Beisenstein, Ltd.,* Appleton, *Steven F. McDowell,* general counsel, *Catholic League for Religious and Civil Rights,* Milwaukee, and oral argument by *Steven F. McDowell.*

For the plaintiff-respondent the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J. This is a review of a decision of the court of appeals, *State v. Horn,* 126 Wis. 2d 447, 377 N.W.2d 176 (1985), affirming a judgment and order of the circuit court for Outagamie county, Hon. Nick F. Schaefer. The trial court entered a judgment of conviction against Bonnie J. Horn, Norman L. Stone, and Jerry G. Horn (Defendants) for criminal trespass contrary to sec. 943.13(1)(b), Stats., (1981–1982).[1] The

---

[1]Section 943.13(1)(b), Stats., (1981–1982), provides:

"**943.13 Criminal trespass to land.** (1) Whoever does any of the following is guilty of a Class C misdemeanor: . . .

trial court also entered an order denying Defendants' motion for post-conviction relief.

The issue presented is: Do the free-speech protections of Art. I, sec. 3 of the Wisconsin Constitution[2] extend to protect speech activities on the grounds of a private medical clinic? In *Jacobs v. Major,* 139 Wis. 2d 492, 407 N.W.2d 832, majority opinion at 504, this court

---

"(b) Enters or remains on any land of another after having been notified by the owner or occupant not to enter or remain on the premises."

The notice provisions are outlined in sec. 943.13(2), Stats., (1981–1982):

"**943.13 Criminal trespass to land.** ... (2) A person who has received notice from the owner or occupant within the meaning of this section if he has been notified personally, either orally or in writing, or if the land is posted. For land to be posted, a sign at least 11 inches square must be placed in at least 2 conspicuous places for every 40 acres to be protected. The sign must carry an appropriate notice and the name of the person giving the notice followed by the word 'owner' if the person giving the notice is the holder of legal title to the land and by the word 'occupant' if the person giving the notice is not the holder of legal title but is a lawful occupant of the land. Proof that appropriate signs as herein provided were erected or in existence upon the premises to be protected within 6 months prior to the event complained of shall be prima facie proof that the premises to be protected were posted as herein provided."

[2]Wisconsin Constitution, Art. I, sec. 3 provides:

"**ARTICLE I ... Free speech; libel. SECTION 3.** Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge the liberty of speech or of the press. In all criminal prosecutions or indictments for libel, the truth may be given in evidence, and if it shall appear to the jury that the matter charged as libelous be true, and was published with good motives and for justifiable ends, the party shall be acquitted; and the jury shall have the right to determine the law and the fact."

held that Art. I, sec. 3 of the Wisconsin Constitution "has plain, unambiguous meaning that free speech is protected constitutionally against state interference" and does not afford protection from private interference. The facts of the instant case show that the Defendants seek protection from private interference with their speech activities. On the basis of our holding in *Jacobs,* we conclude Defendants' actions were not constitutionally protected under Art. I, sec. 3. We, therefore, affirm the decision of the court of appeals.

Defendant's convictions for criminal trespass arose out of two incidents which took place on November 14, 1983 and November 18, 1983. On these dates, the Defendants entered property occupied by the Fox Valley Reproductive Health Care Center (Center). The Center performs medical services, including general gynecology, outpatient vasectomies, and abortions up to and including the fifteenth week of pregnancy.

Defendants are the pastor (Norman L. Stone), associate pastor (Jerry G. Horn) and wife of the associate pastor (Bonnie J. Horn) of an Appleton area church, the Valley Christian Center. Defendants are opposed to abortion, and their activities in the present case represent part of their effort to counsel women "on the question of abortion decisions and alternatives."

On November 14, 1983, the Defendants and their children arrived at the Center in a car and a van. Defendant Jerry Horn and his son went to the rear of the building and planted white wooden crosses in the lawn. Defendant Norman Stone "engaged in prayer and communication activities" in the outdoor area owned by the Center. Later Mr. Horn entered the

waiting room of the Center and attempted to communicate to the patients about "alternatives to abortion." Horn and Stone were asked by police to leave and both refused. Jerry Horn and Norman Stone were charged with violation of the Outagamie county trespass ordinance. These charges were later amended to charges of violations of sec. 943.13, Stats.

On November 18, 1983, the Defendants returned to the Center. Jerry Horn and Bonnie Horn approached a car that had driven into the Center and attempted to converse with and give leaflets to its female occupant. All three Defendants were advised by police that they were trespassing and would be arrested if they did not leave and were subsequently arrested and charged with criminal trespass.[3]

Prior to trial, Defendants brought a motion outlining several constitutional defenses, including the right of free speech under Art. I, sec. 3, of the Wisconsin Constitution. The State responded by filing a motion *in limine,* asking that evidence related to these defenses be suppressed.

On January 31, 1984, the trial court ordered that the parties file briefs on the motion. By written decision dated April 2, 1984, the trial court granted the State's motion *in limine,* ruling that the Defendants would not be allowed to raise and present evidence "relating to an asserted right to trespass premised on the grounds of freedom of religion [sic]

---

[3]Defendants have not challenged the trespass convictions on the merits. We note that the Defendants were properly "notified" of the fact they were trespassing under the terms of sec. 943.13(2), Stats. They remained on the Center's land after having been personally notified, by oral warning, not to remain on the premises. All the elements necessary for conviction of a trespass violation under sec. 943.13(1)(b) (1981–1982) were thus present.

expression, assembly and to consult for the common good."[4]

Defendants' argument to the trial court was that the application of the trespass statutes would violate the Defendants' rights to freedom of speech and rights to assemble and consult for the common good guaranteed by the Wisconsin Constitution. The trial court looked to the analysis employed by the United States Supreme Court in *PruneYard Shopping Center v. Robins*, 447 U.S. 74 (1980). *PruneYard* had been cited by Defendants. The trial court, in discussing it, termed it an "extreme case." In *PruneYard*, the United States Supreme Court concluded that the California Supreme Court could require that individuals be allowed to exercise their state constitutional rights to free speech on the grounds of a privately-owned shopping center, and that such requirement did not amount to an unconstitutional taking of the shopping center owners' property, nor an infringement on the owners' first amendment rights. 447 U.S. at 88.

---

[4]The quoted language is the trial court's paraphrasing and summary of Defendant's argument. Article I, sec. 3 of the Wisconsin Constitution does not refer to freedom of *religious* expression, nor any rights of "assembly" or consulting "for the common good." Article I, sec. 3, only speaks of "liberty of speech or of the press."

The sole issue presented in this case is whether the "liberty of speech" provision of Article I, sec. 3, extends to give Defendants protection for speech activities on the grounds of a private medical clinic. The importance of the ruling by the trial court is that it prohibited the introduction of evidence related to a Defendant's free speech rights, based on the conclusion that Article I, sec. 3, did not extend to protect Defendants speech conduct in this situation. We do not adopt the terminology employed by the Defendants and the trial court. The constitutional right at issue here is the free *speech* right specified in Article I, sec. 3.

In analyzing the Takings Clause question, the *PruneYard* Court noted that the speech activity would not impair the "value or use of the property as a shopping center." *Id.* at 83. The Court also noted that the shopping center was a large commercial complex and not a small retail establishment. *Id.*

The trial court in the instant case, relying on *PruneYard's* treatment of the shopping center owners' arguments, distinguished *PruneYard* on its facts. (The significance of *PruneYard* is discussed later in this opinion.) The trial court also noted the lack of definitive treatment of the issue of protection of free speech in a private context in Wisconsin law. The trial court stated:

> "In the instant case, the property owner is a small single purpose medical facility with access limited to employees and patients. Further, there is every reason to believe that permitting the activity would impair the use of the property as an abortion clinic as the defendants' express purpose was the prevention of abortions. Their expressive activity directly impaired the owner's use of the property. There is no applicable authority in Wisconsin or Federal law for such a defense and defendants cite none. On this basis, this court can only find that this defense is unavailable as a matter of law and the State's motion prohibiting testimony and argument relating to an asserted right to trespass premised on the grounds of freedom of religion [sic] expression, assembly and to consult for the common good is granted."

On appeal, Defendants raised several arguments, including the argument that the freedom of speech provision of the Wisconsin Constitution protects them from prosecution for trespass. As to the free speech

issue, the court of appeals' analysis consisted of the following paragraph:

> "The facts of this case do not require us to decide whether the Wisconsin Constitution will ever protect free speech from purely private interference. Although state courts are free to interpret their own constitutions to provide such protection, we decline to extend protection to speech engaged in on property belonging to a small private medical clinic. Accordingly, we hold that appellants had no right under the Wisconsin Constitution to exercise their free speech rights on the clinic's property." *Horn,* 126 Wis. 2d at 453. (Footnote omitted.)

Defendants argue that, in granting the State's motion *in limine,* the trial court improperly prohibited the jury from considering whether the Defendants' activities at the Center were protected under Wisconsin Constitution, Article I, sec. 3. Defendants assert that, in ruling on the State's motion, the trial court "neither held an evidentiary hearing nor made findings of fact," but instead treated the Defendants' brief as an "offer of proof."

Defendants contend that the trial court should have taken evidence bearing on the free speech defense since their claim of free speech protection "turns completely upon the particular facts of this case." The resolution of the constitutional question raised in this case, Defendants argue, requires "a close analysis of the legally significant facts, or what are sometimes called 'constitutional facts,'" *citing, State v. Woods,* 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984).

Defendants argue that the constitutional issue raised in this case is similar to the constitutional issue raised in cases involving trial court determinations of the voluntariness of a confession, and whether consti-

tutional rights have been properly waived. Defendants note that in *Phillips v. State,* 29 Wis. 2d 521, 528, 139 N.W.2d 41 (1966), this court suggested that trial courts should "make specific and complete findings of the facts underlying a constitutional question." Defendants state that the trial court should have considered the "unique factual circumstances" of this case, including: "content-discrimination, the openness of the property, the impact on the property owner, the peacefulness of the speakers, and the desires of the audience."

The Defendants rely on *State v. Johnson,* 74 Wis. 2d 169, 246 N.W.2d 503 (1976), where two females were criminally charged with committing an act of sexual perversion with a male, who was not charged with any offense. 74 Wis. 2d at 171. The defendants moved to dismiss the complaints, arguing in part that the statutory section under which they were charged was selectively and discriminatorily applied and this constituted a violation of the equal protection clause of the fourteenth amendment.

At the hearing on the motion no evidence was offered. The trial judge heard oral arguments, accepted written briefs and dismissed the complaints. Summarizing the trial court's disposition of the matter, the *Johnson* court stated:

> "From the statements of counsel and from his own recollection of other cases before him, the trial judge concluded that women were being charged with prostitution and that male participants were not being charged with prostitution or other related sexual morality offenses and that this constituted discriminatory enforcement of the law." 74 Wis. 2d at 171.

481

The *Johnson* court reversed the orders of the county court and remanded for an evidentiary hearing, concluding that a "full evidentiary hearing must be held to determine whether there has been selective and discriminatory enforcement of the law. ..." *Id.* at 175. If the defendants could establish a *prima facie* case, the burden would then shift to the State "to show an exercise of valid prosecutorial discretion." *Id.*

In deciding to remand, the *Johnson* court emphasized that the trial judge has a duty to decide constitutional issues; that these issues must be thoroughly briefed and fully presented; and that the trial court must make specific and complete findings of the facts underlying the question. *Id.* at 174–175. Under these standards, the *Johnson* court concluded that remanding for a full hearing was necessary for resolution of the issue.

Defendants urge that here, as in *Johnson,* the trial judge did not conduct a sufficient evidentiary investigation into the facts underlying the issue.

The Defendants also rely on *Moreland Corp. v. Retail Store Employees Union,* 16 Wis. 2d 499, 114 N.W.2d 876 (1962). In *Moreland,* the plaintiff owner of a shopping center sought an injunction to restrain defendants from picketing on a sidewalk in front of the tenant's store in the shopping center. The defendants brought a motion for summary judgment, contending that, in picketing, they were exercising a constitutionally protected right of free speech. The trial court denied the motion and defendants appealed from that order.

The *Moreland* court stated the issue as "whether the respondent, because it has designated its private property for use as a shopping center, has lost its right to ban otherwise lawful picketing." 16 Wis. 2d at 505.

The trial court's denial of the summary judgment motion was upheld on the ground that the record did not disclose the "precise nature" of the shopping center. *Id.* at 506. The *Moreland* court found that the details related to the nature of the shopping center constituted material facts which necessitated a trial. *Id.* The court stated: "In weighing the parties' conflicting interests of private property and free speech, we would want to know the physical characteristics of the shopping center so that our decision on this important policy question could be applied with clarity to other disputes which might arise." *Id.*

Defendants in the present case maintain that, as in *Moreland,* summary treatment of the free speech issue is inappropriate and an extended analysis of the factual circumstances is necessary.

We conclude that the trial court properly granted the State's motion *in limine* asking that any evidence related to a "free speech defense" be suppressed. The dispositive factor in ruling on the availability of the "free speech defense" is whether there is any state interference with the alleged speech activities.

There is no contention that the Center is not private property.[5] However, Defendants argue to this

---

[5]In their Petition for Review, Defendants state: "This case presents this court with the important issue of the scope of state constitutional protection accorded speech on private property." In Defendant's brief to this court, it is noted: "In *Moreland* [*Moreland Corp. v. Retail Store Employees Union,* 16 Wis. 2d 499, 114 N.W.2d 876 (1962)], the issue—as in the case at bar—was whether free speech rights provided a defense to what would otherwise be trespassing on private property."

We also note in Defendants' brief in opposition to the State's motion *in limine,* filed with the trial court, February 20, 1984, Defendants stated: "Defendants recognize that under the United

court that there is a "state interference" here such that the constitutional protections apply to immunize them from conviction for trespass.

Defendants maintain that if this court adopts a bright-line rule holding that there is no constitutional protection for speech from private interference (which is the holding in *Jacobs*), this would amount to imposing a "state action" requirement upon Article I, sec. 3.[6] Defendants advance the rather novel argument

States Constitution, Amendment I, individuals are not normally afforded a protected right to engage in free speech activities on private property."

Thus, it is apparent that Defendants have not contested the fact that the Center is private property. The parties, as well as the trial judge, proceeded on the assumption that the free speech issue was raised in the context of a private property setting.

[6]Defendants use the phrase "state action" as it is employed in the context of federal law. For example, suits brought under sec. 42 U.S.C. sec. 1983 require that there be some type of "state action." sec. 42 U.S.C. sec. 1983 provides:

"**Sec. 1983. Civil action for deprivation of rights.** Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or in the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." 42 USCS sec. 1983.

The "under color of law" requirement has been held to be the equivalent of the "state action" element of the fourteenth amendment. *See, e.g., Briley v. California*, 564 F.2d 849 (9th Cir. 1977). What constitutes "state action" for purposes of sec. 1983 is to be determined on a case-by-case basis; it is generally found to exist when what is involved is exercise of power possessed only because

that even with a "state action" requirement, a free speech defense remains available. This argument runs as follows. The Center "discriminatorily excluded defendants on the basis of the content of their expression." The State then "enforced the discriminatory policy against defendants" by bringing the trespass action. This course of action constitutes state action. Defendants cite various federal cases in support of this argument.[7]

Defendants' "state action" argument misses the mark. First, this is not a discrimination suit. There is no connection between the types of cases cited by Defendants and the case at bar. The question here involves the determination of whether the Center is private property. The actions of the State in enforcing trespass laws have no relevance in determining the nature of ownership and the character of the intrusion in this free speech context.

Second, the Defendants' argument has untoward consequences. Under Defendants' theory, if a private property owner could successfully remove a trespasser

the wrongdoer is clothed with authority of state law. *Bellinier v. Lund,* 438 F. Supp. 47 (N.D. N.Y. 1977).

Our discussion of Defendants' "state action" argument should not be taken to mean that this court is adopting or approving such a "state action" concept in deciding cases dealing with the Wisconsin Constitution, Article I, sec. 3.

[7]The Defendants cite, for example, *Griffin v. Maryland,* 378 U.S. 130 (1964) and *N.A.A.C.P., Frederick County Chapter v. Thompson,* 648 F. Supp. 195 (D. Md. 1986). Both *Griffin* and *Thompson* concern racial discrimination and center on the question whether the state, in each case, was involved in such discrimination. Defendants cite these cases to support their argument that the State, by arresting Defendants for trespass has "become an accomplice in the discriminatory exclusion of individuals holding an unwelcome point of view."

without resorting to calling the police, then no free speech right arises to protect the trespasser from being ejected. However, if the property owner must rely on police to remove the trespasser, the trespasser's speech rights arise, since the action by police constitutes governmental interference. The trespasser is, paradoxically, immune from prosecution for trespass. If enforcement of trespass laws by the State automatically meant that private interference with speech activities became "tinged" and was thereby transformed into governmental interference, this would have the effect of precluding private property owners from enforcing their rights to be free from trespassing speech activities on their property. Adopting Defendants' proposal, the enforcement of the trespass laws would cloak their activity with a free speech privilege. The intervention by the police would convert their trespassing speech activity into a "protected" speech activity, and would also convert private property into some sort of public forum, open to Defendants' use. Such a result is clearly at odds with *Jacobs* and with common sense.

Much of Defendants' argument centers on the contention that the trial judge did not conduct an evidentiary hearing sufficient to garner all the facts necessary to resolve the constitutional issue presented. We do not retreat from or weaken the admonitions to trial judges, set out in *Johnson,* to make sure that, in deciding constitutional issues, the issues are thoroughly presented and briefed and that any facts underlying the issues are properly examined. However, in light of this court's holding in *Jacobs,* an extended presentation of the facts is not required in this case.

Whether or not a defendant in a criminal case is entitled to have the jury consider a defense depends on whether that defense is supported by the evidence. *Johnson v. State,* 85 Wis. 2d 22, 28, 270 N.W.2d 153 (1978). We agree with the State, that, after private ownership was established, the trial court did not need to hold an evidentiary hearing on the free speech issue. At the time of trial, Wisconsin Constitution, Article I, sec. 3, had never been extended to purely private property, nor was there any claim at the trial court level that some type of governmental nexus existed sufficient to render the Center's interference with the Defendants' speech activities, "governmental interference." Thus, the question of availability of a free speech defense under the Wisconsin Constitution was a question of law. The use of the motion *in limine* to raise and dispose of the question of the admissibility of evidence related to a proposed defense was appropriate.[8]

---

[8]*See, eg., State v. Olsen,* 99 Wis. 2d 572, 577–578, 299 N.W.2d 632 (Ct. App. 1980), where the court of appeals upheld a trial court ruling that a defense of necessity was unavailable as a matter of law, and upheld the granting of a motion *in limine* asking that evidence related to this defense be suppressed. The *Olsen* court stated:

> "In virtually all circumstances a trial court must hear an offer of proof to determine whether the evidence would support a defense before ruling whether evidence relating to that defense is relevant. Here, however, the court determined that the defense of necessity was not available because defendant's actions were not caused by the pressure of a natural physical force. It was not necessary for the trial court to take evidence to make the determination, for it was clear from the arguments of counsel that this was strictly a question of law. ..." *Id.* at 577.

Motions *in limine* in Wisconsin appear to have been used primarily in cases where a party seeks to exclude evidence whose

Both the trial court ruling and the decision of the court of appeals were fact-specific. The determinative factor was that the Center was a small, private, medical clinic. In addition, the trial court thought it significant that the activities of the Defendants impaired the property owner's use of the property.

As noted above, the trial court distinguished *PruneYard,* in which the United States Supreme Court affirmed a decision of the California Supreme Court, concluding that the State Constitution protected the reasonable exercise of speech and petitioning in shopping centers, even when the centers are privately owned.[9]

---

probative value is outweighed by its prejudicial effect. *See,* V. Knoppke-Wetzel, Committee of Co-Authors & Advisers, *Defense of Criminal Cases in Wisconsin,* sec. 9.3.7(2) (1974); *see, also,* Annot. *Modern Status of Rules as to Use of Motion in Limine or Similar Preliminary Motion to Secure Exclusion of Prejudicial Evidence or Reference to Prejudicial Matters,* 63 A.L.R.3d 33 (1975). The use of the motion *in limine* has expanded from its use for suppressing prejudicial evidence to obtaining a ruling on admissibility generally. Such use is now common in many jurisdictions. Comment, *The Use of Motions in limine in Civil Litigation,* 1977 Ariz. St. L.J. 443. We note that the Wisconsin Judicial Bench Book Civil (1984) at CV 6–2, states that the purpose of the motion *in limine* is to "obtain [an] advance ruling on admissibility of certain evidence...." The ruling on admissibility may be based on whether evidence is relevant.

[9]We note that the *PruneYard* Court upheld the speech activity of high school students (consisting of passing out pamphlets and soliciting signatures on petitions) inside a privately owned shopping center on the basis that those rights were conferred by the State Constitution.

The United States Supreme Court has made clear, in construing the first amendment, that speech rights are protected from governmental interference. In *Lloyd Corp. v. Tanner,* 402 U.S. 551, 567 (1972), the Court stated:

In the instant case, the trial court noted that *PruneYard* involved a large shopping center while the case before it involved a "single purpose medical facility with access limited to employees and patients." The Defendants argue that the Center actually allowed in other individuals, including members of the clergy and persons offering support to patients. In their petition for review, Defendants state that, given the openness to other pastors, "results reached in the lower court meant that the clinic could arbitrarily and discriminatorily exclude the defendant's expressive

"[I]t must be remembered that the first and fourteenth amendments safeguard the rights of free speech and assembly by limitations on *state* action, not on action by the owner of private property used non-discriminatorily for private purposes only."

In *Hudgens v. NLRB,* 424 U.S. 507, 513 (1976), the Court reiterated: "It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgement by government, federal or state."

The result in *PruneYard* was based on a holding by the California Supreme Court that the California Constitution "protect[s] speech and petitioning, reasonably exercised in shopping centers even when the centers are privately owned." *Robins v. PruneYard Shopping Center,* 153 Cal. Rptr. 854, 592 P.2d 341 (1979). The United States Supreme Court reasoned *Lloyd* did not "limit the authority of the State to exercise its police power or its sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the federal Constitution." 447 U.S. at 81.

We do not adopt the California view, expressed in *PruneYard,* that the free speech rights under the state constitution are broader than the speech rights conferred by the federal constitution. Our interpretation of the Wisconsin Constitution parallels the United States Supreme Courts' construction of the first amendment. In construing Article I, sec. 3, of the Wisconsin Constitution, we have adopted a similar limitation, i.e., free speech is protected from governmental interference.

activities while permitting other pastors to engage in exactly the same type of activity."

Following *Jacobs,* the issue of the degree of openness of the Center is irrelevant. Having determined that there is no state interference and that the Center is private property, and further balancing of factors related to access, content of the communication, size of the site, availability of alternative sites for protest, and like matters, is unnecessary. Private property owners may determine who will and who will not be allowed upon their property.

The fact-specific holdings of the trial court and the court of appeals are understandable given the often-stated judicial policy of avoiding constitutional issues when a case can be resolved on other grounds. Here, the lower courts cautiously proceeded and resolved the "smaller" constitutional issue of whether Defendant's activities, under the facts, should be protected under the Wisconsin Constitution and avoided the "larger" constitutional issue of whether the Wisconsin Constitution can ever protect speech activity from private interference on private property.

We uphold the ruling of the trial court and the decision of the court of appeals as to result, but not as to rationale. This court has stated that "we will not reverse a court decision though the reason for that decision may have been erroneously or inadequately expressed." *Mueller v. Mizia,* 33 Wis. 2d 311, 318, 147 N.W.2d 269 (1967). Our concern is with the holding and not so much with the reasoning; if the holding is correct, it should be sustained, and this court may do so on a theory or on reasoning not presented to the lower courts. *Liberty Trucking Co. v. ILHR Dept.,* 57 Wis. 2d 331, 342, 204 N.W.2d 457 (1973).

This court has also stated that a trial court's ruling will not be reversed "if the ruling is correct and the record reveals a factual underpinning that would support the proper findings." *State v. Fishnick,* 127 Wis. 2d 247, 264, 378 N.W.2d 272 (1985), *citing, Mueller,* 33 Wis. 2d at 318; *see also, Hochgurtel v. San Felippo,* 78 Wis. 2d 70, 86, 253 N.W.2d 526 (1977). The record here reveals that the Center was privately owned and that there was no State interference with Defendants' speech related activities. Under such circumstances, Defendants receive no protection for their activities under Article I, sec. 3, of the Wisconsin Constitution.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). Adhering to my concurring opinion in *Jacobs v. Major,* 139 Wis. 2d 492, 407 N.W.2d 832 (1987), I do not join the majority opinion. I do, however, concur in the result. The clinic in this case is not a "public forum." I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN and JUSTICE WILLIAM A. BABLITCH join this concurrence.