ZASTROW, Plaintiff in error, v. STATE, Defendant in error.

*No. State 135.   Submitted under sec. (Rule) 251.54 January 4, 1974.—Decided March 5, 1974.*
(Also reported in 215 N. W. 2d 426.)

The cause was submitted for the plaintiff in error on the brief of *James P. Lonsdorf* and *Timken & Lonsdorf,* all of Wausau, and for the defendant in error on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

HANLEY, J. The following issues are presented on review.

1. Is welfare fraud involving the sum of between $100 and $500 a felony?

2. Did the trial court err in excluding a psychiatrist's testimony on the defendant's drugged condition at the time of the offense?

3. Did the trial court err in limiting the direct examination of the defendant?

4. Did the remarks of counsel for the state at sentencing prejudice the trial court?

*Question of felony or misdemeanor.*

The defendant was charged with soliciting another to aid a felon by preventing prosecution through the placing of false testimony. A felon is defined in sec. 946.47 (2) (a), Stats., as a person who commits an act within the jurisdiction of this state which constitutes a felony under the law of this state. The defendant contends the offense of welfare fraud involving an amount between $100 and $500 is a misdemeanor and not a felony and that therefore he could not be convicted of the crime with which he was charged.

There actually is no crime entitled "welfare fraud." Sec. 49.12, Stats.,[1] provides penalties for wilfully making

---

[1] "Penalties; evidence. (1) Any person who, with intent to secure public assistance under ch. 49, whether for himself or for some other person, wilfully makes any false representations may, if the value of such assistance so secured does not exceed $100, be im-

any false representations with intent to secure public assistance. If the value of the assistance so secured does not exceed $100 the possible imprisonment is not more than six months. If the assistance so secured exceeds $100 but does not exceed $500 the possible imprisonment is *not more than one year*. If the value exceeds $500 the possible imprisonment is not more than five years and if the value exceeds $2,500, the punishment is as prescribed in sec. 943.20 (3) (c). The statute does not specify the grade of offense or the place of confinement.

The state contends that under sec. 973.02, Stats.,[2] a sentence of one year may be served either in the state prisons or in the county jail. Under sec. 939.60,[3] a felony is defined as a crime punishable by imprisonment in the state prison and sec. 939.20 [4] provides that the provisions

prisoned not more than 6 months, if the value of such assistance exceeds $100 but does not exceed $500, be imprisoned not more than one year, if the value of such assistance exceeds $500, be imprisoned not more than 5 years, and if the value of such assistance exceeds $2,500, be punished as prescribed under s. 943.20 (3) (c)."

[2] "Place of imprisonment when none expressed. When a statute authorizes imprisonment for its violation but does not prescribe the place of imprisonment, 1) a sentence of less than one year shall be to the county jail, 2) a sentence of more than one year shall be to the Wisconsin state prisons and the minimum under the indeterminate sentence law shall be one year, and 3) a sentence of one year may be to either the Wisconsin state prisons or the county jail. But in any proper case sentence and commitment may nevertheless be to the Wisconsin home for women, the department or any house of correction or other institution as provided by law."

[3] "Felony and misdemeanor defined. A crime punishable by imprisonment in the state prison is a felony. Every other crime is a misdemeanor."

[4] "Provisions which apply only to the criminal code. Sections 939.22 and 939.23 apply only to crimes defined in the criminal code. Other sections in ch. 939 apply to crimes defined in other chapters of the statutes as well as to those defined in the criminal code."

of ch. 939 apply to crimes defined in other chapters of the statutes as well as to those defined in the Criminal Code. Under these sections of the statutes the state maintains the original charge of "welfare fraud" is a felony.

The defendant relies on *State ex rel. Gaynon v. Krueger* [5] as indicating that the court will not "plug in" sec. 973.02, Stats., to each statute outside the Criminal Code.

In *Krueger* this court determined that a violation of sec. 71.11 (42), Stats. 1965, was a misdemeanor. The statute did not specify the grade of offense nor the place of confinement. The penalty was imprisonment of not more than one year. The majority of the court felt that the drafting technique of the Criminal Code which was revised in 1945 that the grade of offense was determined by reference to sec. 973.02 (formerly 959.044) unless the place of imprisonment was specifically designated as the county jail did not apply to sec. 71.11 (42). This section was enacted prior to the Criminal Code and therefore could not have been enacted with reference to the new technique of designating the grade of offense by length of punishment with reference to the "place of imprisonment" section. Therefore, the majority of the court looked to the intent of the legislature at the time of enactment and concluded that the statute was intended to create a misdemeanor.

In *Krueger* this court was not stating that the Criminal Code had no relation to offenses outside the code and that the intent of the legislature must be searched for in each case of a noncode offense. The case clearly implies that the court looked to intent only because the statute in question had been created prior to the new Criminal Code and not substantively changed since the 1945 revision of the Criminal Code. The case also im-

[5] (1966), 31 Wis. 2d 609, 143 N. W. 2d 437.

plies that if a noncode offense was created after 1945 or substantively changed after 1945, it would be subject to the ordinary presumption that it was created or re-enacted with reference to those sections of the Criminal Code defining felonies and misdemeanors. To hold otherwise would be to ignore sec. 939.20, Stats., which makes sec. 939.60, applicable to crimes defined in other chapters of the statutes.

The penalties provided by sec. 49.12, Stats., were changed considerably in 1957 and must be presumed to have been enacted in light of the provisions of the Criminal Code and the "place of imprisonment" statute. Therefore, we agree with the position of the state that the statutes compel the conclusion that a penalty of "not more than one year" creates a felony. However, even if one looks to the legislative history of sec. 49.12, one must conclude that the legislature did intend a felony to be designated. In the 1939 statutes, present sec. 49.12 was numbered sec. 49.124. That statute was worded as follows:

Sec. 49.124, Stats. 1939. "Penalties: (1) Any person who, with intent to secure relief whether for himself or for some other person, shall wilfully make any false representations shall upon conviction be punished as provided in section 343.25.

"(2) Any person who wilfully does any act designed to interfere with the proper administration of relief shall be guilty of a misdemeanor and upon conviction shall be fined not less than 10 nor more than one hundred dollars or be punished by imprisonment in the county jail for not less than ten nor more than sixty days."

Sec. 343.25, Stats. 1939, referred to penalties for obtaining money by false pretenses and provided that if the amount exceeded $100 the punishment was a sentence to the state prison for not more than five years nor less than one year or in the county jail for not more than one year or a fine not exceeding $1,000 or less than $200.

If the amount was less than $100 the punishment was a sentence to the county jail or state prison for not more than one year or a fine not exceeding $200. Thus, all violations of sec. 49.124 (1), Stats. 1939, were felonies regardless of the amount involved because they were punishable by imprisonment in the state prison. This is clear when compared to sec. 49.124 (2), Stats. 1939, which expressly labels the violation of that subsection a misdemeanor.

After an amendment of the statute in 1941 it provided that below the amount of $50 a violation of sub. (1) would be a misdemeanor by providing that confinement be in the county jail. Above the value of $50, confinement was designated to be in the state prison and thus remained a felony.

In 1945 the statute was renumbered sec. 49.12 and the words designating the place of confinement were removed. This would not change the grade of the offenses. And in 1957 the present statutory language was created. The value of aid secured which would still constitute a misdemeanor was raised from $50 to $100 and the lengths of imprisonment for securing public assistance in excess of $100 were graduated according to the amount in excess of $100. Thus, we think that the offense was always a felony and that the amendment of 1957 only created a more graded scale of punishments within the felony category which resulted in a lower sentence if the amount was between $100 and $500.

We conclude that obtaining public assistance by making false representations where the amount obtained exceeds $100 but is less than $500 does constitute a felony.

*Psychiatrist's testimony.*

Defendant had originally pleaded not guilty by reason of insanity but later this plea was withdrawn. The court

had appointed a psychiatrist to examine the defendant and report to the court. Dr. Heywood did examine the defendant and his report indicated that he considered the defendant legally sane at the time of the alleged crime. At the trial, defense counsel called Dr. Heywood as a defense witness and attempted to elicit the medical history of the defendant. Objection was made and the court heard an offer of proof outside the presence of the jury. The state contends that the offer was defective because defense counsel only indicated what questions he would put to the doctor and did not show what testimony would be elicited.

Here the defense counsel in his offer of proof did not ask the doctor the really crucial question for a defense under sec. 939.42, Stats. He did not ask the doctor whether it was his opinion to a reasonable degree of certainty that the effects of the abrupt cessation of medication described by the defendant would make the defendant incapable of forming the requisite intent or incapable of distinguishing between right and wrong. The doctor merely indicated he would testify that a cessation of medication would create a state of excitement, anxiety, sleeplessness, etc.

Any error in the exclusion of the proffered testimony would not be prejudicial. The capacity to form intent can be inferred from the acts and conduct of a defendant.[6] In this case, the district attorney testified that the defendant came to his office and discussed the charges against him. He apparently was lucid enough to carry on this conversation and to indicate that the money was not his. When pressed by the district attorney he named Damon Kostroski. He did not name his hired hand, Joe Dallman, who testified at the trial that the money really belonged to him as payment for back wages. The defendant would have known this at the time he named

---

[6] *State v. Guiden* (1970), 46 Wis. 2d 328, 174 N. W. 2d 488.

Damon Kostroski as the owner of the money. There was also testimony that for several days after the incident the defendant continued to phone Damon Kostroski to ask him to go to the office of the district attorney. There is also the problem that the offer of proof did not reveal that Dr. Heywood would testify that in his opinion the defendant was in such a mental state due to the effects of sudden withdrawal of medication that he was incapable of forming the requisite intent or to tell right from wrong.

We cannot conclude that if the evidence had been admitted that a different result would have occurred.

*Limitation of direct examination.*

The defendant claims the court erred in not allowing an explanation by defendant of the money found on his person. We do not agree.

The ownership of the money was clearly not a material issue. The trial judge did not abuse his discretion in sustaining an objection to continued questioning of the defendant as to the ownership of the money. The court in sustaining the objection indicated that he felt the questions were repetitious. Previously, the defendant had testified in response to his counsel's questions that the money had come from Joe Dallman and that he had paid him the money. He then testified that when arrested he had only $3 of his own money on his person. Counsel then asked: "And the balance of it was not your money?" The defendant answered "No." It was at this point that the trial court sustained the prosecutor's objection which defendant urges was error. It is clear that the desired testimony was elicited. On cross-examination the prosecutor questioned the defendant on the source of the $3,400. Obviously, considerable testimony explaining the presence of the money on the person of the defendant was actually received.

*Sentencing.*

Finally, defendant contends that the remarks of the prosecutor at sentencing were improper and biased the court. The prosecutor did state to the court that he felt "the defendant's entire testimony on the stand was not the truth" and that "there has been a lot of testimony that probably has been very close to perjury." At that point the court stated:

"That is not an issue in the case in any event. On the other hand, this court did not believe the defendant's story or that told by the witnesses. Therefore, this court is of the opinion that the defendant has not told the truth under oath. Normally the court would have a presentence investigation and I think to be fair to the defendant the court should do this in this case."

After the presentence investigation, the court rejected the report's recommendation of probation and sentenced the defendant to one year in the Wisconsin State Prisons.

The question of the trial court's opinion that perjury was committed by the defendant has been considered by this court previously. In *Lange v. State* (1972), 54 Wis. 2d 569, 196 N. W. 2d 680, the trial judge made statements at sentencing about perjury which were much stronger than those of the prosecutor or judge in this case. The court agreed that it would be impermissible to add to a defendant's sentence an additional term for the crime of perjury. However, this court said:

". . . We have, however, frequently pointed out that the trial judge's appraisal of a defendant's attitude, including the evidence of his veracity at trial is highly relevant to the exercise of sentencing discretion." (P. 575.)

We think it is equally clear in this case that the court found the defendant's conduct at the trial relevant to the decision of whether to grant probation and that there is no evidence that an additional term of imprisonment

was imposed because the court felt the defendant had committed perjury. The judge discussed the veracity of the defendant at the trial and then stated that he questioned "seriously whether probation for a year or even two years would cause this defendant to conduct himself any differently than he has . . . ."

We conclude that the judgment of conviction and the order denying the motion for a new trial should be affirmed.

*By the Court.*—Judgment and order affirmed.