STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Richard R. SCHUMACHER, Defendant-Appellant.

Supreme Court

*No. 86–0499–CR. Argued March 30, 1988.—Decided June 9, 1988.*

(Also reported in 424 N.W.2d 672.)

389

For the plaintiff-respondent-petitioner the cause was argued by *Marguerite M. Moeller,* assistant attorney general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

For the defendant-appellant there was a brief by *Robert Crawford* and *Crawford Law Firm,* Milwaukee, and oral argument by *Robert Crawford.*

HEFFERNAN, CHIEF JUSTICE. This case comes to us on a petition by the state to review an unpublished

court of appeals decision[1] which reversed a judgment of the circuit court for Grant county, John R. Wagner, circuit judge, and remanded for a new trial. Because we conclude that the court of appeals erred on matters of both procedure and of substance, we reverse the court of appeals decision.

The issues in this case are these: First, to what extent the court of appeals may discretionarily review instructional errors allegedly made at trial, but not objected to there; and, second, whether the state's decision to offer proof of Schumacher's guilt on welfare fraud contrary to sec. 49.12, Stats., under a continuing crime theory amounted to proof, the duplicitous nature of which denied Schumacher his right to both a unanimous jury and the right to be found guilty beyond a reasonable doubt on every element of the crime charged.

We conclude that the court of appeals erred when it exercised its discretion to review trial court instructions to which no objection was made at trial. We also conclude that the trial court correctly allowed the charge of welfare fraud to go to the jury as a continuing crime, and therefore defendant was not deprived of a unanimous verdict.

The case arose thus: Richard Schumacher (Schumacher) was charged with two counts of welfare fraud under sec. 49.12(6), Stats.[2] The first count alleged that

[1]*State v. Richard R. Schumacher,* No. 86–0499–CR, unpublished court of appeals decision, filed March 12, 1987.

[2]Sec. 49.12(6), Stats., reads:

"(6) Where a person is originally eligible for assistance and receives any income or assets or both thereafter and fails to notify the officer or agency granting such assistance of the receipt of such assets within 10 days after such receipt and continues to receive aid, such failure to so notify the proper officer or agency of

Schumacher had failed to report income received, and that over a five-month period, he had received a fraudulent overgrant of welfare payments in the amount of $245. And, on a second charge, that over a second, four-month period, his failure to report income had resulted in a fraudulent overgrant of $869. An overgrant is an overpayment of welfare funds to one originally eligible for a certain level of payment, but who is no longer eligible for this level of payment because of unreported outside (non-welfare payments).

At trial, the state introduced evidence that the first count resulted from Schumacher's failure to report income on three different occasions: $90 on September 13, 1983; $180 on January 9, 1984; and $30 on February 10, 1984. The state's case was that this $300 in unreported payments resulted in an overgrant of $245. Regarding count two, the state introduced evidence that Schumacher had failed to report income on eight occasions: $120 on August 1, 1984; $100 on August 17, 1984; $100 on August 20, 1984; $50 on August 23, 1984; $25 on August 18, 1984; $651 on September 6, 1984; $60 on September 12, 1984; and

receipt of such assets or income or both shall be considered a fraud and the penalties in sub. (1) shall apply."

The penalty structure from sec. 49.12(1), Stats., referred to in the above subsection reads:

"**49.12 Penalties; evidence.** (1) Any person who, with intent to secure public assistance under this chapter, whether for himself or for some other person, wilfully makes any false representations may, if the value of such assistance so secured does not exceed $100, be imprisoned not more than 6 months, if the value of such assistance exceeds $100 but does not exceed $500, be imprisoned not more than one year, if the value of such assistance exceeds $500, be imprisoned not more than 5 years, and if the value of such assistance exceeds $2,500, be punished as prescribed under s. 943.20(3)(c)."

$37 on September 20, 1984. The state's case was that this total in unreported payments resulted in an overgrant of $869. The state did not charge all the occasions of overgrant as one continuing offense, because in the interim between the two periods charged, Schumacher went off public assistance payments.

The unreported monies which led to the overgrants all derived from defendant's employment with two employers. He received unreported compensation from the Grant County Sheriff's department for occasional work as a deputy sheriff, and from Rowley Transportation Company, for occasional work performed as a trucker.

The state also offered proof of Schumacher's conversations with the local official in charge of detecting cases of welfare fraud. According to proof adduced, Schumacher had on several occasions asked detailed questions on how one could "play the system" and get away with welfare fraud.

At the end of the trial, and before the jury was instructed, the court read the proposed instructions and verdict forms into the record. There were no objections to them by either the prosecution or the defense.[3] These instructions and proposed verdicts

---

[3]The trial judge, the prosecuting attorney (Ann Kenney) and the defense attorney (Kim Skemp) had the following conversation on-record in open court:

"THE COURT: Let the record reflect that we're in open court, that the jury has just returned from lunch and is in the jury room. The record may further reflect that counsel met with the Court in chambers and we discussed the instructions. . . .

"Now, we went over the verdict forms. I found that the verdicts I have prepared were improper so I had new verdict forms prepared. I will read them in the record. They will be four verdicts. We the jury find the defendant Richard R. Schumacher

followed the theory of the prosecution that Schumacher was guilty of two separate continuing offenses of welfare fraud. Thus, the verdicts did not break the offenses down occasion by occasion, or month by month, but followed the original two charges in the case, such that the eleven separate occasions of failure to report income were combined into two separate offenses. The defense never objected to these proposed verdicts.

The trial court instructed the jury in conformity to the instructions accepted by the parties.[4] Subse-

guilty of welfare fraud as charged in the first count of the information and the public assistance he secured for which he was not eligible to receive in the amount of blank dollars. The second verdict will be we the jury find the defendant Richard R. Schumacher not guilty of welfare fraud as charged in the first count of the information. Third will be as follows: We the jury find the defendant guilty of welfare fraud as changed in the second count of the information. Found the value of the public assistance secured for the defendant for which the defendant was not eligible to be in the amount of blank number of dollars. Fourth, we the jury find the defendant not guilty of welfare fraud as charged in the second count of the information. Each of the verdicts have a place for the date and the foreperson. They are unanimous verdicts. Any objection to any of the four verdicts forms as prepared by the Court, Ms. Kenney?

"MS. KENNEY: No, Your Honor.
"THE COURT: Mr. Skemp?
"MR. SKEMP: No, Your Honor."

[4]Among other instructions given was the following general charge on unanimity:

"THE COURT: This is a criminal, not a civil case; therefore, before the jury can return a verdict which can legally be received, such verdict must be reached unanimously. In a criminal case all twelve jurors must agree in order to arrive at a verdict."

After reading this unanimity charge, the trial judge sent the jury from the room, and concluded the session by stating:

quently, the defendant was found guilty of both counts of welfare fraud. On the first count, the jury found that he had received a fraudulent overgrant of $245, and, on the second count, that he had received a fraudulent overgrant of $869.

The court withheld sentence and instead imposed a two-year term of probation on count one, a concurrent four-year term on count two, with three months in the county jail on count one, and six months, concurrent, on count two as a condition of the respective probations.

The defendant filed a motion for post-conviction relief, which was deemed denied after sixty days had run and the trial court had not responded.[5] Thereafter, the defendant filed an appeal from the judgment of conviction.

On appeal, the defendant argued that the charges against him at the trial court had been duplicitous, and that such duplicity deprived him of his constitutional right to a unanimous jury, and that he had been denied his constitutional right to have the state prove at trial each essential element of the offenses to the "beyond a reasonable doubt" standard. The state countered that defendant's failure to challenge either

"The record may reflect the jury has left the courtroom. The corridor door has been closed behind them. Any objection to the instructions as read, Ms. Kenney?

"MS. KENNEY: No, Your Honor.

"THE COURT: Any objection to the instructions as read, Mr. Skemp?

"MR. SKEMP: No, Your Honor."

[5]Section 809.30(2)(i), Stats., reads in part:

"The trial court shall determine by an order the defendant's motion for postconviction relief within 60 days of its filing or the motion is considered to be denied ...."

the information, or the proof, at trial should bar him from raising the duplicity issue for the first time on appeal. The state further argued that the proof was not duplicitous.

The court of appeals reversed. The court concluded that the proof of welfare fraud at the trial had been fatally duplicitous. The court reasoned that, because the trial court had not instructed the jury that the state had the burden to prove each element of the offense beyond a reasonable doubt, and because the jury was not told that it had to be unanimous in its finding of guilt as to each offense (*i.e.*, each unreported non-welfare payment), the jury could have found the defendant guilty on both counts by merely finding that, sometime during the time periods, Schumacher had failed to report some income. Further reasoning that this amounted to a failure to hold the state to its responsibility to prove each element of the offense, or each offense, the court of appeals concluded that defendant must have a new trial and reversed the trial court judgment.

Regarding the state's argument that the defendant's failure to raise the issue at trial should prevent him from raising the argument for the first time on appeal: The court of appeals stated that the failure to instruct went to the "integrity of the factfinding process," a standard which the court of appeals understood this court to have laid out in *State v. Shah,* 134 Wis. 2d 246, 254, 397 N.W.2d 492 (1986). The appeals court reasoned that, because of the failure to object at trial, the review of the error was discretionary with the court, rather than reviewable as a matter of right. However, the appeals court reasoned that this court had indicated that such discretion to review ought to be exercised broadly by all appellate courts of

this state when the integrity of the factfinding process was implicated.

In dissent, Judge Dykman cited two lines of authority for his position that the court should not have reached the duplicity issue, because the defendant had failed to raise it at trial. First, Judge Dykman cited sec. 805.13(3), Stats.,[6] and *State v. Olson,* 99 Wis. 2d 572, 582, 299 N.W.2d 632 (Ct. App. 1980), for the proposition that a failure to object operates as a waiver, even where a federal constitutional right is at stake. Judge Dykman further cited cases in which this court had interpreted the limitation contained in sec. 805.13(3), such as *Air Wisconsin, Inc. v. North Central Airlines, Inc.,* 98 Wis. 2d 301, 296 N.W.2d 749 (1980), and *In Interest of C.E.W.,* 124 Wis. 2d 47, 368 N.W.2d 47 (1985), to the effect that the purpose of the requirement for an objection was to give the trial court an opportunity to correct the error, and the appellate court an opportunity to review the grounds for the objection.

A second line of authority examined by Judge Dykman was the *State v. Shah,* 134 Wis. 2d 246, 397

[6]Section 805.13(3), Stats., provides:

"At the close of the evidence and before arguments to the jury, the court shall conduct a conference with counsel outside the presence of the jury. At the conference, or at such earlier time as the court reasonably directs, counsel may file written motions that the court instruct the jury on the law, and submit verdict questions, as set forth in the motions. The court shall inform counsel on the record of its proposed action on the motions and of the instructions and verdict it proposes to submit. Counsel may object to the proposed instructions or verdict on the grounds of incompleteness or other error, stating the grounds for objection with particularity on the record. Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict."

N.W.2d 492 (1986), and *State v. Baldwin,* 101 Wis. 2d 441, 304 N.W.2d 742 (1981), line of cases. Judge Dykman did not understand these cases to be granting the appeals court a discretionary right of review whenever there was an error which, in the court of appeals' judgment went to the "integrity of the factfinding process." Instead, he believed that, while the supreme court had such power of review, the court of appeals did not, and ought not to, have it. The reason offered was that, while the supreme court is a law-making court, the court of appeals is a high-volume, error-correcting court, which does not need a discretion so broad that it can reach even error which has been waived by operation of sec. 805.13(3), Stats.

To determine the question of how broad a discretion the court of appeals ought to have to address appeals from unobjected-to instructional error,[7] a review of the recent statutes and of the cases decided by this court is appropriate.

Prior to January 1, 1976, the effective date of sec. 805.13(3), Stats., the common law of this state was that a failure to object to instructions amounted to a

---

[7]The uncertainty on this issue is by no means confined to the case at bar. In the published case of *State v. Damon,* 140 Wis. 2d 297, 409 N.W.2d 444 (Ct. App. 1987), the court of appeals concluded that *Shah* did not create any exception to the waiver rule of sec. 805.13(3), Stats. That court held: "In *Shah* ... [t]he court was not establishing a new exception to sec. 805.13(3), but rather was simply electing to exercise its discretionary power to review the waived error." *Id.* at 304.

However, even though this statement is correct, it still leaves unresolved the issue of whether the court of appeals has the same type of discretionary power of review as the supreme court.

In addition, this uncertainty over the scope of the court of appeals' discretionary power to review unobjected-to jury instructions pervades at least nine unreported court of appeals cases.

waiver of any right to raise the issue of erroneous instruction on appeal. *See, e.g., Schmidtke v. Great Atlantic & Pacific Tea Co.,* 236 Wis. 283, 292, 294 N.W. 828 (1940). However, there were several judicially created exceptions to this common law waiver rule, which allowed for discretionary review by this court. In addition, after 1913, there was a statutory exception which allowed for discretionary reversal, a statutory exception which exists today.

Turning first to the statutory exception allowing discretionary reversal, sec. 2405m, Stats. 1913, allowed a discretionary reversal when it either appeared from the record that the real issue in controversy had not been fully tried, or when it was probable that justice had, for any reason miscarried.[8] This statute eventually became the current section 751.06, Stats.[9] When the court of appeals was instituted in

___

[8]Section 2405m, Stats. 1913, read:

"**Discretionary reversal.** In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the supreme court may in its discretion reverse the judgment or order appealed from, regardless of the question whether proper motions, objections, or exceptions appear in the record or not, and may also, in case of reversal, direct the entry of the proper judgment or remit the case to the trial court for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with the statutes governing legal procedure, as shall be deemed necessary to accomplish the ends of justice."

[9]Section 751.06, Stats., reads:

"**Discretionary reversal.** In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or

1978, a substantially similar power of discretionary reversal was extended to that court under sec. 752.35, Stats.[10]

Over the course of this statute's life, this court has often been called upon to interpret the scope of the discretionary-reversal power granted to both this court and to the court of appeals. As was summarized in the recent case of *State v. Wyss,* 124 Wis. 2d 681, 735, 370 N.W.2d 745 (1985), several different principles developed. First, under the "real controversy not fully tried" category, two different situations were included: (1) Either the jury was not given an opportunity to hear important testimony that bore on an important issue in the case, or (2) the jury had before it testimony or evidence which had been improperly admitted, and this material obscured a crucial issue and prevented the real controversy from being fully tried.

Under the second prong of the discretionary-reversal statute, the "miscarriage of justice" prong, the

objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice."

[10]Section 752.35, Stats., reads:

"**Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice."

case law made clear that, in order to grant a discretionary reversal under this prong, the court would have to conclude that there would be a substantial probability that a different result would be likely on retrial. *Wyss,* 124 Wis. at 741.

*Wyss* itself made clear that the two prongs of these statutes are disjunctive: The court of appeals could use its discretion to reverse if either the real controversy had not been fully tried, or if there had been such a miscarriage of justice that a different result was likely on retrial. Further, *Wyss* affirmed that, under the first prong, the "real controversy" prong, the court would not have to conclude that there would be a probability of a substantially different result on retrial.

The statutory exception found in secs. 751.06 and 752.35, Stats., to the waiver rule currently found in sec. 805.13(3), has been in continuous effect from 1913 to the present. As this statutory exception has been most recently interpreted in *Wyss,* either the court of appeals or this court may accept for discretionary reversal any case in which either the real controversy was not fully tried or a miscarriage of justice has occurred. Thus, although the common law, and subsequently sec. 805.13(3), both make clear that a failure to object to proposed instructions creates a waiver to those instructions, secs. 751.06 and 752.35, carve out a statutory exception to the waiver rule to the extent those statutes are by their terms applicable.

Turning to the non-statutory, or common law, exceptions to the waiver rule, the first exception was that, even were instructional error not objected to, there was no waiver if the instruction misstated the law. *Lambert v. State,* 73 Wis. 2d 590, 607, 243 N.W.2d

524 (1976). This rule, referred to as the "form-substance" distinction rule, meant that the instructional burden fell by operation of law on the trial court, with the result that counsel, who might be looking for some legal error on which to premise an appeal, had no incentive to correct the trial court's misstatement of law in the instruction.

Section 805.13(3), Stats., shifted the burden of objecting, along with the penalty for not objecting, onto counsel.[11] Thus, sec. 805.13(3), makes clear that there is waiver if counsel fail to object to a proposed verdict or instruction at the jury trial. The consequences of sec. 805.13(3) is to overturn the *Lambert* form-substance rule. *See Air Wisconsin, Inc. v. North Central Airlines, Inc.,* 98 Wis. 2d 301, 315–16, 296 N.W.2d 749 (1980); *State v. Shah,* 134 Wis. 2d at 251–52, n. 4.

Another doctrine in effect before the adoption of sec. 805.13(3), Stats., was the plain-error doctrine. Under this doctrine, "errors in instruction may be reviewed on appeal, even on the court's own motion, where the error is so plain or fundamental as to affect the substantial rights of the defendant." *Claybrooks v. State,* 50 Wis. 2d 79, 84–85, 183 N.W.2d 139 (1971). This doctrine, like the *Lambert* form-substance rule discussed above, was superseded in respect to the claimed instructional error by sec. 805.13(3). *In the Interest of C.E.W.,* 124 Wis. 2d 47, 55, 358 N.W.2d 47 (1985). In *C.E.W.,* this court restricted the plain-error doctrine to evidentiary questions.

Yet another doctrine in effect before the effective date of sec. 805.13(3), Stats., was the "compelling

---

[11]Section 972.11(1), Stats., makes sec. 805.13(3) applicable to criminal proceedings.

circumstances" rule. This rule began as a simple statement that, when there were compelling circumstances, the supreme court would consider addressing alleged trial error even when there had been a failure to object at trial. *State v. Escobedo,* 44 Wis. 2d 85, 92, 170 N.W.2d 709 (1969). This simple statement was elaborated upon in many subsequent cases, important among which are *Brown v. State,* 59 Wis. 2d 200, 214, 207 N.W.2d 602 (1973), a case where this court restated the simple compelling-circumstances test; *State v. Baldwin,* 101 Wis. 2d 441, 446, 304 N.W.2d 742 (1981), a case where this court elaborated the test by stating that matters going to the "integrity of the fact finding process" are compelling circumstances; *State v. Gustafson,* 119 Wis. 2d 676, 693, 351 N.W.2d 653 (1984), where this court suggested that a failure to raise an objection when the instructional error went to the integrity of the fact-finding process did not amount to waiver; *State v. Zelenka,* 130 Wis. 2d 34, 44, 387 N.W.2d 55 (1986), where the court made clear that the failure to object to instructional error actually did amount to a waiver, but that this court was not precluded from reviewing the matter when the claimed error went to the integrity of the fact-finding process; and finally *State v. Shah,* 134 Wis. 2d 246, 254, 397 N.W.2d 492 (1986), where this court stated that "an appellate court may nevertheless reach the merits of the defendant's claimed error"[12] when the

[12]The court of appeals majority in this case, as well as a different court of appeals panel in the published case of *State v. Damon,* 140 Wis. 2d 297, 409 N.W.2d 444 (Ct. App. 1987), makes much of the language "*an* appellate court." (Emphasis supplied.) The court of appeals majority in this case explicitly says, and the *Damon* court implies, that this language indicates an intent on the part of this court to extend discretionary-review power to the court

error complained of goes to the integrity of the fact-finding process.

This line of cases has taken a pre-805.13(3) exception—the compelling circumstances test—and developed it into a doctrine allowing review even when a defendant has failed to object to an instruction at the trial conference if the error goes to the integrity of the fact-finding process. As such, the doctrine amounts to authority of this court to review a particular type of claimed error although the claimed error was waived by a failure to object.

Arguments have been raised that, because the "integrity of the fact finding process" test developed in this line of cases arises out of the pre-805.13(3) doctrine of compelling circumstances, the line of cases rests on an incorrect basis and is inapplicable. According to this argument, once sec. 805.13(3) was effective, the compelling circumstances test and its outgrowth, the "integrity" test, just like the *Lambert* form-substance test and the *Claybrooks* plain-error test, is no longer a valid exception to sec. 805.13(3)'s declaration that failure to object constitutes waiver.

Balanced against this rationale is the argument that this court, in its law-defining and law-developing functions, must have the inherent power to reach claimed error, even when the error might not fall into the relatively narrow discretionary-reversal power

---

of appeals. However, a closer look at the *Shah* opinion indicates that this court was thinking only in terms of the supreme court. Thus, the full quote, from which the above is extracted, is:

> "Even if counsel has failed to enter a proper objection at trial, an appellate court may nevertheless reach the merits of the defendant's claimed error. *This court* has exercised its discretion to review jury instructions which go to the integrity of the fact-finding process." *Id.* at 253–54, emphasis supplied.

granted by sec. 751.06, Stats. This argument in favor of a broad power to reach claimed error goes to the essential difference between a discretionary power to reverse—granted by sec. 751.06–and a discretionary power to review—granted by this "integrity of the fact finding" line of cases which culminates in *Shah.*

As we have stated in the past, the purpose of this court is now "to oversee and implement the statewide development of the law." *State v. Mosley,* 102 Wis. 2d 636, 665, 307 N.W.2d 200 (1981). Further, "[t]his court has a law-declaring function, that is, determining on common-law principles what the law should be in view of the statutory and decisional law of the state and in view of the general trend of the law. Thus, this court ... has been designated by the constitution and the legislature as a law-declaring court." *State ex rel. La Crosse Tribune v. Circuit Court,* 115 Wis. 2d 220, 229–30, 340 N.W.2d 460 (1983).

In the exercise of these functions, the broad scope of this court's power of review can be appreciated by examining cases in which we have granted review despite the presence of some factor which would ordinarily preclude such review. Thus, we have said that we can reach issues which are moot, but nonetheless are of great public importance. *State v. Seymour,* 24 Wis. 2d 258, 261, 128 N.W.2d 680 (1964). We have said that we will reach issues of great public importance even when the parties would not ordinarily have standing to raise the issues. *Town of Germantown v. Village of Germantown,* 70 Wis. 2d 704, 710, 235 N.W.2d 486 (1975). We have said that we will resolve issues which are moot in the particular case when the situation under review occurs so often that guidance is

405

needed for the trial courts. *Carlyle v. Karns,* 9 Wis. 2d 394, 397–98, 101 N.W.2d 92 (1960).

We have also listed the many factors we will take into account in granting petitions for review. *In re Standards to Review Petitions to Appeal,* 85 Wis. 2d xiii–xiv.[13] These factors make clear that this court will consider petitions primarily on the basis of the ongoing evolution of the law, which is again in accordance with our law-declaring and developing function.

[4]

Because a power to review an error, even one technically waived, is essential for this court to properly discharge its functions, and because this power has been consistently employed in circum-

---

[13] "The court will grant a petition to appeal whenever... any one of the following criteria are met:

"(A)  A real and significant question of federal or state constitutional law is presented.

"(B)  The petition demonstrates a need for this court to consider establishing, implementing or changing a policy within this court's authority.

"(C)  A decision by this court will help to develop, clarify, or harmonize the law, and

"(1)  The case calls for the application of a new doctrine rather than merely the application of well-settled principles to the factual situation; or

"(2)  The question presented is a novel one, the resolution of which will have state-wide impact; or

"(3)  The question presented is not factual in nature but rather is a question of law of the type that is likely to recur unless resolved by this court.

"(D)  The Court of Appeals' decision is in conflict with controlling opinions of the United States Supreme Court or this court or other Court of Appeals' decisions.

"(E)  The Court of Appeals' decision is in accord with opinions of this court or the Court of Appeals but due to the passage of time or changing circumstances, such opinions are ripe for reexamination."

406

stances where there could be said to be some technical obstruction to our review, we conclude that the "integrity of the fact-finding process" test developed in a line of cases, many of which postdate sec. 805.13(3), Stats., is a valid exception to the waiver rule which this court can use in the proper situation. In this respect, it is like the exceptions to the standing doctrines discussed above. This does not mean, however, that we will use this broad discretionary-review power indiscriminately. Instead, it is a power to be used sparingly, and only in exceptional circumstances. *Cf. State v. Cuyler,* 110 Wis. 2d 133, 141, 327 N.W.2d 662 (1983) (court exercises its statutory discretionary-reversal power only in exceptional cases).

■ We conclude that a broad discretionary power of review is appropriate to this court. With respect to the court of appeals, however, the situation is different. The court of appeals is an error-correcting court. *State v. Mosley,* 102 Wis. 636, 665–66, 307 N.W.2d 200 (1981); *State v. Grawien,* 123 Wis. 2d 428, 432, 367 N.W.2d 816 (Ct. App. 1985). This means that, unlike the supreme court, the court of appeals does not have a law-developing or law-declaring function. As this court explained in *State ex rel. Swan v. Elections Board,* 133 Wis. 2d 87, 93–94, 394 N.W.2d 732 (1986):

> "The court of appeals is intended to be a high-volume, error-correcting court, having a close relationship to the circuit courts in respect to the superintending control of circuit court functions. ... The supreme court is primarily concerned with the institutional functions of our judicial system, while the court of appeals is charged primarily with error correcting in the individual case."

407

Given this difference in function, it would be incompatible to give the court of appeals a broad discretionary power of review.

However, it is apparent from the passage quoted above that the court of appeals is charged to correct error in the individual case. Further, under our two-tiered appellate system, the court of appeals is destined to be the court of last resort for most cases. Walther, Grove and Heffernan, *Appellate Practice and Procedure in Wisconsin,* sec. 1.2 (1986). Thus, it would be inappropriate for that court to have no discretion with respect to claimed error in instruction.

This is where the discretionary power of reversal under sec. 752.35, Stats., as interpreted by *State v. Wyss,* 124 Wis. 2d 681, 370 N.W.2d 745 (1985), comes into its own. A discretionary power of reversal (as opposed to a discretionary power of review) is compatible with doing justice in the individual case, yet the limitation imposed by a discretionary power of reversal is also a limitation compatible with the fact that the court of appeals does not declare or develop the law.[14]

---

[14]Denying the court of appeals a broad discretionary power of review to reach waived jury instructions does not mean, however, that that court is precluded from reaching issues which are by law unwaivable. An example of an unwaivable issue is the absolute inability of the incompetent to waive the defense of incompetency to stand trial. *State v. Johnson,* 133 Wis. 2d 207, 218, n. 1, 395 N.W.2d 176 (1986).

Further, because these unwaivable issues often are bound up with ineffective-assistance-of-counsel questions, and because ineffective assistance of counsel is not the type of issue which ordinarily could be brought up by defendant at trial, the court of appeals' discretionary power must extend to a discretionary power to review such matters as unwaivable issues and ineffective-

[6]

Given the foregoing, it is apparent that the court of appeals in this case exceeded its discretionary authority in taking this issue under its conception of *Shah*'s integrity of the fact-finding process test. The court of appeals does not have the power to find that unobjected-to errors go to the integrity of the fact-finding process, and therefore may properly be reviewed by the court of appeals. This is incompatible with the court of appeals error-correcting function. Further, in the context of that error-correcting function, such an exception to the waiver rule of sec. 805.13(3) would amount to a repudiation of the idea underlying sec. 805.13(3). As discussed previously, we explained in *Air Wisconsin*, 98 Wis. 2d at 311, that the purpose of a waiver rule for unobjected-to instructions was to assure that counsel would bring these errors to the attention of the trial court, when that court could easily remedy the deficiency. For this additional reason, a broad discretionary power in the court of appeals would be an inappropriate exception to sec. 805.13(3)'s waiver rule.

██

Accordingly, we conclude that the defendant Schumacher has waived his right under sec. 805.13(3), Stats., because of his failure to object to the proposed jury instructions and the proposed verdicts at the pre-instruction conference held in this case at the circuit court level. Because the court of appeals had no power to reach the unobjected-to instructions, the case would ordinarily rest there, with the defendant's verdict of guilty of welfare fraud affirmed.

---

assistance-of-counsel claims. This is very different, however, from a broad power to discretionarily review instructions which are waived under operation of sec. 805.13(3), Stats.

However, while the court of appeals has no general power or review, this court does. Because, under the above analysis, the issue of whether the charges are duplicitous is properly before this court,[15] and in order to resolve this underlying issue, we use our discretionary power of review to reach this issue, and to determine whether the claimed instructional error goes to the "integrity of the fact-finding process."

The defendant argued, and the court of appeals majority agreed, that the state's theory of the case led to duplicitous proof being presented against him at trial. Defendant argues that because the jury verdicts each included several instances of unreported income, the guilty verdict may have been premised on a finding that he was merely guilty of some, but not all, of the failures to report income. Alternatively, he argues that, even if he did fail to report income for certain periods, absent proof that those specific failures to report income resulted in fraudulent overgrants, the guilty verdict may have penalized him for some behavior which was simply not criminal in the first place. Implicit in this argument is that mere intentional failure to report, which failure does not result in an overgrant, is not punishable under sec. 49.12(6), Stats.

Based on these arguments, defendant urges this court to find the proof against him duplicitous, because the only proper unit of charging welfare fraud is in one-month units, because under the method that

---

[15]*See e.g., State v. Strege,* 116 Wis. 2d 477, 492, 343 N.W.2d 100 (1984) ("Once a case is properly before us, it is this court's obligation to resolve the issues presented regardless of the court's original reason for accepting the case.").

welfare benefits are distributed in Wisconsin,[16] all failures to report income lead to overgrants on a month-by-month basis. In addition, defendant urges this court to also find the proof against him duplicitous because the state did not meet its burden of proving each element of the crime beyond a reasonable doubt, because the state did not prove that each failure to report within ten days resulted in an overgrant.

Section 49.12(6), Stats., incorporates the penalty structure of sec. 49.12(1). Subsection (1) makes clear that the penalties for welfare fraud become increasingly more severe depending on the amount of money the defrauder has received. Thus, one who fraudulently receives under $100 in overgrants under subsec. (6) is guilty of a misdemeanor, and may be imprisoned for up to six months; one who receives between $100 and $500 is guilty of a felony,[17] and can be imprisoned up to one year; one who receives over $500 is guilty of a felony and may be imprisoned up to five years; while one who receives over $2500 is guilty of a felony and may be punished by a fine not to exceed $10,000, or up to ten years imprisonment, or both.

This structure of penalties is a progressive one. The more money one fails to report under subsec. (6), the stiffer the penalty becomes. Use of a progressive penalty structure must, within reason, contemplate a

[16]Evidence adduced at trial indicated that the Wisconsin time line on distributing welfare benefits is on a three-month cycle. Thus, income earned in January, and properly reported, would not be subtracted against January benefits, but against the recipient's March benefits.

[17]See *Zastrow v. State,* 62 Wis. 2d 381, 388, 215 N.W.2d 426 (1974) (fraudulently obtaining welfare benefits where the amount obtained exceeds $100 but is less than $500 constitutes a felony).

continuing crime. Were it otherwise, the upper brackets of the progressive penalty structure would be mere surplusage, since, under the state ceiling for welfare payments, there could never be a one-time overgrant which could trigger the higher penalties. In view of this progressive penalty structure, the crime of welfare fraud by failing to report income, which results in an ever increasing amount of overgrant, must be capable of being charged as a continuing crime whenever the facts of the case support this possibility.[18] Therefore, defendant's argument that the correct charging period must be one month is clearly incorrect. The charging period was obviously contemplated to be the continuing period through which ran the pattern of failing to report income.[19]

[18]In fact, in this case, Richard Schumacher went off public assistance in the period between the two continuing episodes of welfare fraud. Thus, the state could not have charged Schumacher with one continuing offense. A similar situation might arise where there was an intervening hiatus of time between the episodes, or where there was an intervening period where earnings were reported, and the facts would not support a continuing-offense theory.

[19]*Cf. Weber v. State,* 59 Wis. 2d 371, 208 N.W.2d 396 (1973); *John v. State,* 96 Wis. 2d 183, 291 N.W.2d 502 (1980). In both of those cases, this court declared that the fraud period was properly the entire time that the defendants failed to report their change of family situation under sec. 49.12(9), Stats.—in *Weber,* a husband's return to live with his family full time, and in *John,* a family's failure to report that one daughter had not been in the household for a period of several years.

The situation of a defendant consistently failing to report income over a similar contiguous time span is conceptually similar to those cases, especially where, as here, all the income was derived from a small number of employers (two) with whom the

Our reliance on the importance of the penalty structure's progressive nature receives support from this court's precedent in *John v. State,* 96 Wis. 2d 183, 291 N.W.2d 502 (1980), although the exact question under consideration there was what a correct unit of charging was under sec. 49.12(9), Stats.,[20] rather than under sec. 49.12(6), as in this case. The relevance of the *John* case is great in view of the similar structures and purposes of both subsec. (6) and subsec. (9).

Both subsections are directed to penalizing welfare fraud which occurs, not due to an initial fraud in eligibility statements, but due to defendant's failure to report some subsequent change—a receipt of assets under subsec. (6) or a change of circumstances under subsec. (9). In addition, both subsections utilize the

defendant maintained an ongoing, albeit irregular, employee-employer relationship.

It may be that in another case under sec. 49.12(6), Stats., where the episodes of the alleged fraud are more chronologically separated, the state's freedom to charge the events as a continuing offense will not comport with the facts of the case despite the power granted to charge welfare fraud as a continuing offense implicit in the progressive penalty structure. Here, however, since the episodes of failure to report income all occurred within a fairly compact time frame, there is no factual argument to be made that the offense, while theoretically capable of being charged as a continuing offense, was not actually a continuing offense under the facts of this case.

[20]Section 49.12(9), Stats., reads in relevant part:

"If any person obtains for himself or herself, or any other person or dependents or both, assistance under this chapter on the basis of facts stated to the authorities charged with the responsibility of furnishing assistance and fails to notify said authorities within 10 days of any change in the facts as originally stated and continues to receive assistance based on the originally stated facts such failure to notify shall be considered a fraud and the penalties in sub. (1) shall apply."

same progressive penalty structure found in subsec. (1) of the same statute.

With respect to the penalty structure as it related to the question of whether welfare fraud under sec. 49.12(9), Stats., was a continuing offense or not, the court in *John* stated:

> "Interpreting the failure to report changes in family conditions to be a continuing offense also accords with the penalty provisions of the statute. The penalties become gradationally more severe with the amount of assistance fraudulently received. Because the incremental amounts of public assistance tend to be small, the increasing penalty structure provided in the statute would be virtually meaningless if each receipt of benefits comprised a separate offense. Although the total number of offenses may be greater, under this interpretation, the only penalty which could be imposed in all but the most unusual circumstances would be that applicable for the increased benefits fraudulently received on one date." *John,* 96 Wis. 2d at 191.

This reasoning applies equally well to a failure to report income as to a change in family conditions.

Because we conclude that the progressive penalty structure under sec. 49.12(6), Stats., clearly indicates that the legislature intended welfare fraud to be chargeable (and subsequently provable) as a continuing offense, we conclude that there was no failure by the state to prove every element of the crime Schumacher was charged with, despite the fact that the only sums proved to have been fraudulently obtained and considered by the jury were the total sums, rather than each and every intermediate sum.

414

This rationale has a further implication because the progressive structure of the penalty statute cuts both ways. The state strenuously argues that, although the jury instructions for sec. 49.12(6), Stats. (*i.e.,* Wis JI—Crim. 1852 (1980)) require as their sixth element that the state offer proof of some benefit to the defendant as an element of the crime of welfare fraud,[21] the statute does not make that requirement. Instead, the state argues that the jury instructions are incorrect, and that, under the statute, the mere failure to report income constitutes the crime. This argument, however, like defendant's arguments, also fails to consider the progressive penalty statute embodied by reference into sec. 49.12(6).

Subsection (1)'s penalty section begins with, and consistently embodies throughout it, the phrase, "the value of such assistance." Such a phrase contemplates that there be some "value," which in turn contemplates some receipt of that value by the defendant. Thus, the jury instructions are correct, and the mere failure to report cannot be the crime of fraud.

However, this ramification of the progressive penalty structure is not fatal to sustaining the conviction in this case. This is because, in the context of a continuing crime, the state need not actually demonstrate that each failure to report resulted in an individual overgrant. Instead, in order to prove all the elements of the continuing crime of welfare fraud, the state need only show that the defendant obtained

---

[21]The relevant portion of the jury instructions reads:

"The sixth element requires that the defendant became *ineligible to receive all or part of the assistance granted* because of the failure to report the receipt of the other (income) (assets) and his failure to accurately report the receipt within the required ten days." (Emphasis supplied.)

some total amount of overgrant as a result of his continued intentional failure to report outside income.

The jury in this case heard evidence concerning the total sums which the defendant had obtained, and because they agreed on those totals in the verdicts, the state properly discharged its burden of proving every element of the crime charged. Further, in view of the jury's unanimity on the total amounts, the requirement for jury unanimity on every element of the crime was also met. Lastly, the jury also had before it evidence (the conversations with the welfare fraud agent) from which it could determine that Schumacher's failure to report income was intentional.

We conclude that the court of appeals does not have the power to review unobjected-to jury instructions. However, in this case, that lack of power in itself does not prejudice Richard Schumacher. Even if that court had had the power to review the jury instructions in this case, its conclusion regarding the allegedly duplicitous nature of the proof in this case was incorrect. Therefore, because that court was incorrect on both the procedural question of its power of review, and the legal question of whether welfare fraud under sec. 49.12(6), Stats., is a continuing offense or not, the decision of the court of appeals is reversed.

*By the Court.*—Decision reversed.

SHIRLEY S. ABRAHAMSON, J. (concurring). I join the majority opinion and write separately to summarize what I view as the key principles regarding the powers of review and reversal of the court of appeals:

1. The court of appeals has jurisdiction over a properly filed appeal whether or not the appellant objected to a jury instruction or other alleged error at the trial court. *Cf. Hartford v. Wales,* 138 Wis. 2d 508, 406 N.W.2d 426 (1987) (party's failure to file post-verdict motions).

2. If the appellant properly objected to an instruction or other alleged error at the trial court, the appellant has preserved the issue for appellate review as of right. The general rule is that the court of appeals reviews the objected-to, allegedly erroneous matter but does not reverse a judgment unless the error constitutes prejudicial error. *State v. Dyess,* 124 Wis. 2d 525, 370 N.W.2d 222 (1985); sec. 805.18(2), Stats. 1985–86.

3. If the appellant fails to object or improperly objects to an instruction or other alleged error at the trial court, the appellant has ordinarily waived the error and has no right to have the court of appeals review the alleged error.

4. Even if the appellant has not preserved the opportunity to have the allegedly erroneous instruction or other alleged error reviewed on appeal as of right, the court of appeals has discretion to *reverse* the judgment, under sec. 752.35, Stats. 1985–86, (1) if, because of the erroneous inclusion or erroneous exclusion of evidence, the real controversy has not been fully tried or (2) if, because of an error, it is probable that justice has for any reason miscarried, that is, an appellate court could conclude to a substantial degree of probability, that a new trial would produce a different result. *State v. Wyss,* 124 Wis. 2d 681, 735, 742, 370 N.W.2d 745 (1985).

In this case only the second ground under sec. 752.35 is available because this case does not involve erroneous exclusion or inclusion of evidence.[1]

The court of appeals in this case apparently could not conclude to a substantial degree of probability that a new trial would produce a different result. It therefore did not reverse the judgment (and review the instruction) under the second prong of sec. 752.35. The court of appeals did, however, reverse the judgment (and review the instruction), concluding that the erroneous jury instruction constituted reversible error. The majority opinion holds that the court of appeals errs when it reviews an unobjected-to, allegedly erroneous instruction and reverses a judgment without relying on sec. 752.35.

5. In exercising its power of discretionary reversal under sec. 752.35, the court of appeals must first examine the unobjected-to, allegedly erroneous instruction. The court of appeals must determine whether there would be grounds for discretionary reversal under "the relatively narrow discretionary reversal power granted be sec. 752.35," majority opinion at pages 404–405, if the court of appeals were to find the unobjected-to instruction erroneous. If the court of appeals would exercise its discretionary power to reverse under sec. 752.35 if there was error, then it should review the unobjected-to instruction to determine if the instruc-

---

[1]As a result of this decision, the discussion in *Merrill, Lynch v. Boeck,* 127 Wis. 2d 127, 141–43, 377 N.W.2d 605 (1985), of reversal in the interest of justice is probably incorrect, and counsel should be reluctant to rely on it. In that case the court reversed a judgment on the basis of the first prong of sec. 752.35, that is, the "real controversy was not fully and fairly tried," even though the error related to the instructions and the theory of the case, not to the inclusion or exclusion of evidence.

tion is indeed erroneous. *Air Wisconsin, Inc. v. North Central Airlines, Inc.,* 98 Wis. 24 301, 317–18, 296 N.W.2d 749 (1980); *In Interest of C.E.W.,* 124 Wis. 2d 47, 57, n. 6 (1985). If the court of appeals would not exercise its discretionary power to reverse under sec. 752.35 if there was error, then the court of appeals should not review the unobjected-to, allegedly erroneous instruction and reverse the judgment, even if it believes, as it believed in this case, that there was prejudicial error. Majority opinion at pages 409, 416.

In short, as I analyze sec. 752.35, the discretionary power to reverse a judgment under the statute on the basis of an allegedly erroneous but unobjected-to jury instruction necessarily includes the power to review that jury instruction. I am therefore uncomfortable when the majority opinion states without qualification that "we conclude that the court of appeals does not have power to review unobjected-to jury instructions." Majority opinion at page 416.

6. As a result of the majority opinion, the court of appeals cannot review certain errors which may affect the integrity of the trial. For the appellant to obtain relief in such a case, the appellant must come to this court, because this court has broader power to review an unobjected-to, allegedly erroneous instruction than does the court of appeals. If the unobjected-to, allegedly erroneous instruction goes to the integrity of the fact-finding process (compelling circumstances), this court may exercise its discretion to review the alleged error, even if the alleged error is one that would not move the court to reverse the judgment under its discretionary reversal power granted by sec. 751.06, this court's counterpart to sec. 752.35. Thus in this case the court reviewed the

unobjected-to, allegedly erroneous instruction and concluded there was no error.[2]

7. This court, not the court of appeals, will be the only court with the power to grant an appellant relief for an unobjected-to, allegedly erroneous instruction that does not fall within one of the two prongs of the discretionary reversal provisions of sec. 752.35. Appellants should, of course, point out the respective powers of the court of appeals and this court when seeking review in this court. As a result of the majority opinion this court should receive and grant more by-passes, petitions for review, and certifications.

For the reason set forth, I concur.

[2]The student author of a recent law review note analyzing the *Wyss* case concluded that a fairness test was not needed under secs. 751.06 and 752.35, because both the court of appeals and this court have the power, apart from sec. 752.35 and sec. 751.06, respectively, to review an alleged error that goes to the integrity of the fact-finding process. Note, *State v. Wyss: A New Appellate Standard for Granting New Trials in the Interest of Justice,* 1987 Wis. L. Rev. 171, 184–85. The majority opinion apparently rejects the note's view regarding the powers of the court of appeals except to the extent that the court of appeals may review "unwaivable" issues and ineffective-assistance-of-counsel claims. Majority opinion n. 14.