**Thomas G. McCARVILLE, Petitioner,**

v.

**Leverett BALDWIN, Superintendent of the Milwaukee County House of Correction, and James Doyle, Attorney General of Wisconsin, Defendants.**

Civ. A. No. 93–C–59.

United States District Court,
E.D. Wisconsin.

Aug. 17, 1993.

John T. Wasielewski, Milwaukee, WI, for petitioner.

Sally L. Wellman, Asst. Atty. Gen., Madison, WI, for defendants.

## ORDER

TERENCE T. EVANS, Chief Judge.

On November 30, 1988, Thomas McCarville was charged with five counts of lewd and lascivious behavior in violation of Wisconsin Statute § 944.20(2). All the events allegedly occurred earlier that month and involved claims that Mr. McCarville exposed himself at his apartment window to several female high school students. Mr. McCarville lived in a second floor apartment near the end of a pedestrian bridge, which crossed a highway. A window of Mr. McCarville's apartment faced the footbridge.

Mr. McCarville was found guilty on all five counts. He was sentenced to serve five consecutive 60–day terms. State appeals failed to give him relief so he filed this case seeking a federal writ of habeas corpus.

At Mr. McCarville's trial, Shantel Staudt testified that on both November 4 and 11, 1988, she had been crossing the footbridge when she heard someone calling to her. She looked up and saw a naked man, who turned out to be Mr. McCarville. Ms. Staudt stated that she saw Mr. McCarville's penis both times and that on November 4 he was fondling himself.

On a third occasion, November 16, Ms. Staudt was on the bridge with Penny Livingston and Gina Lockman—showing them where the prior incidents had occurred—when they looked up and saw Mr. McCarville, again naked. He apparently did not call out. At trial, Ms. Staudt could not recall whether she had seen his penis on this occasion. Ms. Lockman testified that she did not see Mr. McCarville's penis or his pubic hair. The window went down to a point "a little above his thighs," although she was not certain. Ms. Livingston stated that she knew the man had no clothes on because "[i]t was all just the color of flesh, and by his pubic area you could see it was a darker color, you know, of the hair and you couldn't really see specifics. . . ."

Peggy Mikolajczak testified at trial that on November 11, 1988, she was crossing the footbridge when someone called out and whistled to her. The noise came from the apartment ahead, where she saw a man standing naked at the window. Ms. Mikolajczak told her friend Karen Kessler about the incident and on November 16, as the two girls crossed the footbridge, Ms. Kessler looked up and saw a nude man standing at the window. She did not see his penis. Ms. Mikolajczak did not look up as they passed the window. Mr. McCarville apparently did not call out.

Mr. McCarville testified that in October 1988 he suffered severe burns in his genital area in an industrial accident. Medical records documented the injury. According to Mr. McCarville, he was at home recuperating on the dates of the above incidents and was often naked because clothing caused discomfort. He denied that he had called out to the girls on November 4 or 11, but stated that he yelled to some girls on November 16 because they were giggling and gesturing at him. He stated that he did not intend for anyone to see him nude. Mr. McCarville introduced photographs of his apartment from inside and also from the bridge showing the height of the window in relation to his body to support his argument that his penis was not visible.

At the time of the above incidents, the pertinent portion of section 944.20 read as follows: "Whoever does any of the following is guilty of a Class A misdemeanor: * * * (2) Publicly and indecently exposes a sex organ. . . ." Effective August 9, 1989, the statute was amended to read: "Whoever does any of the following is guilty of a Class A misdemeanor: * * * (2) Publicly and indecently exposes * * * *genitals or pubic area.*" Wis.Stat. § 944.20(2) (Supp.1992) (emphasis in original to indicate modification). Although Mr. McCarville was correctly charged under the old version of the statute, at the conclusion of testimony the trial judge instructed the jury regarding the first element of the offense using the language of the *new* law: "The first element requires that the defendant exhibited to the view of another person or persons his genitals or pubic area."

Article 1, section 10, of the United States Constitution prohibits the passage of *ex post*

*facto* laws. The scope of this provision was defined early in the history of this country by Justice Chase. He defined an impermissible *ex post facto* law as

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

*Calder v. Bull,* 3 Dall. 386, 390, 1 L.Ed. 648 (1798), *quoted in Collins v. Youngblood,* 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990) (emphasis deleted). In other words, legislatures cannot retroactively alter the definition of crimes or increase the punishment for criminal acts. *Collins,* 497 U.S. at 43, 110 S.Ct. at 2719. Just as legislatures cannot pass *ex post facto* laws, a state court's use of an *ex post facto* law is similarly prohibited by the due process clause. *Cf. Bouie v. City of Columbia,* 378 U.S. 347, 353–354, 84 S.Ct. 1697, 1702–1703, 12 L.Ed.2d 894 (1964). In this habeas proceeding, Mr. McCarville argues that the trial judge's use of the elements of the amended version of section 944.20(2) constituted an impermissible *ex post facto* application of law.

█ The merits of Mr. McCarville's *ex post facto* argument are actually the easy part of this case. He makes a convincing argument that "genitals" is the equivalent of "sex organ"—meaning the penis on a man— and that pubic area is the area around the genitals or sex organ. Thus, the "genitals or pubic area" language broadened the range of prohibited conduct, and the use of the amended statute's definition violated the *ex post facto* clause because Mr. McCarville could have been convicted for conduct that was not criminal at the time of his actions.

The use of the amended version of section 944.20(2) was a violation of the *ex post facto* clause. It impermissibly increased the type of conduct for which Mr. McCarville could be convicted. The State does not dispute this conclusion. The district attorney's brief on direct appeal, sounding remarkably like a brief in support of Mr. McCarville's case, admitted the impropriety of the jury instructions and agreed that part of the case should be reversed because of the *ex post facto* problem.

> It appears that the jury as to counts three through five was not relying on any observation of the defendant's genitals or sex organ by the State's witnesses as there was no such testimony. There was testimony though that the defendant's pubic hair was visible and the jury more than likely convicted the defendant based upon the defendant's display of his pubic area. The law at the time of the alleged offense did not make it a crime for the defendant to display his pubic area, but only made it a crime to display the sex organ. The law on *ex post facto* as outlined by the appellant's brief makes it clear that the defendant cannot be convicted for an act that was not a crime when committed. Since the jury more than likely could not have convicted the defendant for publicly and indecently exposing his sex organ based on the testimony, the fact that the jury was improperly instructed lead[ing] to the defendant's conviction would clearly be substantial error and, therefore, warrant a reversal.

Response to petition, ex. C at 6–7. In its brief on the present habeas petition, the State has not even bothered to argue the merits of the *ex post facto* issue.

As to counts three through five, no testimony indicated that the witnesses actually saw Mr. McCarville's penis, although some witnesses testified that his pubic hair was visible. The use of the amended version of section 944.20(2) was harmful error. As to counts one and two, however, the use of the amended law was harmless, as Ms. Staudt testified that she did view Mr. McCarville's penis.

As a federal judge examining the habeas petition of a person in state custody, however, I cannot reach these merits immediately.

The procedural problems are far trickier for Mr. McCarville and must come first.

■ Mr. McCarville has a problem that is extremely hard to overcome: He did not object to the jury instruction quoted above. He admits that fact in his brief. Brief in support of petition at 7. In Wisconsin, failure to object to a proposed instruction constitutes a waiver of the error.[1] Wis.Stat. §§ 805.13(3) and 972.11(1); *Hamed v. County of Milwaukee*, 108 Wis.2d 257, 271, 321 N.W.2d 199 (1982). The purpose of requiring an objection is to give the trial court an opportunity to correct the error. *See State v. Schumacher*, 144 Wis.2d 388, 409, 424 N.W.2d 672 (1988).

The Wisconsin Court of Appeals discussed the *ex post facto* issue in a few paragraphs of the decision of Mr. McCarville's appeal. The decisive paragraph was based on the fact that Mr. McCarville did not object at trial:

> McCarville failed to object to the trial court jury instruction; such failure normally amounts to a waiver, ... but the waiver rule does not apply when the claimed error affects substantial rights.... This exception to the waiver rule is called the "plain error" rule.... The test to be applied to determine if an appellate court will review an instruction waiver is whether the error

is so plain or fundamental as to affect the defendant's substantial rights.... Thus, the defendant must first establish that there was error and then show that the error is so plain or fundamental as to affect those substantial rights. This court concludes that McCarville has failed, as a matter of law, to show any error in the instruction despite the change in the statutory language argued.[2]

*State v. McCarville*, 1992 WL 211141 (1992). Because Mr. McCarville did not meet the exception to the waiver rule, the court of appeals affirmed the judgment. The Wisconsin Supreme Court denied the petition for review without opinion.

■ When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court. *Ylst v. Nunnemaker*, —— U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991). The court of appeals's use of a state procedural basis for its decision means two things. First, there was an adequate and independent state law reason for deciding against Mr. McCarville.[3] A federal court cannot review a question of federal law decided by a state court if the decision of the state court rested on a state law ground that is independent of the federal question and

---

**1.** Mr. McCarville has not argued that this is a case where there was a material variance between the instructions given and the instructions proposed, such that no waiver occurred as stated in Wis.Stat. § 805.13(4).

**2.** It should first be noted that the court of appeals found no error to exist even in the face of the State's concession that it did. The State had admitted that "[a]s to counts three through five, there appears to be 'plain error,' which would override any waiver of the defense counsel's failure to timely object." Response to petition, ex. C at 5.

Second, the court of appeals apparently believed that it had more discretion to review or reverse on this point than it actually had. In denying Mr. McCarville's appeal, the court of appeals relied on *State v. Kemp*, 106 Wis.2d 697, 318 N.W.2d 13 (1982), in which the Wisconsin Supreme Court stated that under the "plain error" rule, jury instructions will be reviewed despite the absence of objection, where a defendant's substantial rights are affected. In *State v. Nye*, 100 Wis.2d 398, 302 N.W.2d 83 (App.), aff'd, 105 Wis.2d 63, 312 N.W.2d 826 (1981), the court of appeals believed that it also had the

power to review instruction errors so plain or fundamental as to affect substantial rights. In *State v. Schumacher*, 144 Wis.2d 388, 402, 424 N.W.2d 672 (1988), however, the Wisconsin Supreme Court clarified that the plain-error rule was superseded in respect to claimed instructional error by section 805.13(3). Although the Supreme Court has the power to review important issues even if waived, the court of appeals, as an error-correcting court, can reach unobjected-to instructions only through the discretionary power of reversal given by Wis.Stat. § 752.35: "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has miscarried" such that a different result is likely on retrial. *Schumacher*, 144 Wis.2d at 407–409, 424 N.W.2d 672. The parties here have never argued that section 752.35 applied.

**3.** The court of appeals decision controls this analysis because the Supreme Court rendered its decision without opinion. Where there has been one reasoned state decision rejecting a federal claim, later unexplained orders upholding that decision rest upon the same ground. *Ylst v. Nunnemaker*, —— U.S. ——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

adequate to support the judgment. *Coleman v. Thompson,* —— U.S. ——, —— – ——, 111 S.Ct. 2546, 2553–54, 115 L.Ed.2d 640 (1991). This rule applies whether the state law ground was substantive or procedural. *Id.,* at ——, 111 S.Ct. at 2554. A federal court on habeas corpus review of state prisoner claims can presume that there is no independent and adequate state ground for a state court decision—in other words, it can address the petition—only when the state court decision "fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Id.,* at ——, 111 S.Ct. at 2557 (quoting *Michigan v. Long,* 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476–77, 77 L.Ed.2d 1201 (1983)).

The court of appeals's decision does not fairly appear to rest primarily on federal law, nor is it interwoven with federal law. The court decided this issue based on state waiver law. In discussing waiver it neither mentioned nor cited any federal constitutional law, cases or principles. Mr. McCarville argues that because the court of appeals recited part of his *ex post facto* argument before concluding that "McCarville failed, as a matter of law, to show any error in the instruction despite the change in the statutory language argued," the waiver decision was interwoven with federal law. But, the issue of waiver itself does not change based on whether the claimed error was one of federal significance or state law significance. If Mr. McCarville's argument is accepted, then any waiver of a federal constitutional issue would interweave with federal law, always allowing federal court review. That just is not the case. Regardless of what type of error is alleged, the issue of waiver and its exceptions was one of state procedural law such that the federal *ex post facto* issue was not interwoven.

Second, to overcome his procedural default, Mr. McCarville must show cause for the default and prejudice from not being allowed to pursue the issue on federal habeas. *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982). In all cases in which a state prisoner has de-

faulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman,* —— U.S. at ——, 111 S.Ct. at 2565.

Mr. McCarville has presented absolutely no reason for his failure to object to the jury instructions, let alone enough of a reason to meet the cause standard. Consequently, the cause-and-prejudice analysis is at an end.

The other option, "fundamental miscarriage of justice," is more viable for Mr. McCarville. Where a constitutional violation "has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986); *Mills v. Jordan,* 979 F.2d 1273, 1278 (7th Cir.1992). Although Mr. McCarville does not argue this point either, strictly applying a waiver rule would be inconsistent with the role of this doctrine. *See Mills,* 979 F.2d at 1277. This is the "last avenue open to habeas petitioners who waived their claims through procedural defaults in state courts and cannot satisfy the cause-and-prejudice requirement." *Buelow v. Dickey,* 847 F.2d 420, 427 (7th Cir.1988).

The United States Supreme Court has stated that, without doubt, conviction and punishment for an act that the law does not make criminal "inherently results in a complete miscarriage of justice" and presents "exceptional circumstances" justifying collateral relief. *Davis v. United States,* 417 U.S. 333, 346–47, 94 S.Ct. 2298, 2305–06, 41 L.Ed.2d 109 (1974).

The State has conceded that in regard to counts three, four, and five, no evidence showed that Mr. McCarville's sex organ was visible, although evidence was presented that his pubic area was visible. At the time of Mr. McCarville's actions, though, exposure of the pubic area was not part of the crime of lewd and lascivious behavior. As to counts

three, four, and five, therefore, Mr. McCarville was most likely convicted for conduct that was not criminal at the time of his actions. It appears that a constitutional violation probably resulted in the conviction of one who is actually innocent.

Mr. McCarville has therefore met this alternative test for overcoming his procedural default and, as to counts three, four, and five, his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is GRANTED. Those counts are DISMISSED. On counts one and two, federal habeas relief is DENIED.

SO ORDERED.